**SALOMON ENGLANDER Y CIA, LTDA, Plaintiff,**

v.

**ISRAEL DISCOUNT BANK, LIMITED, Defendant and Third-Party Plaintiff,**

v.

**SUZ–ETTE FASHIONS, INC., Third-Party Defendant.**

No. 79 Civ. 6532 RLC.

United States District Court, S. D. New York.

July 30, 1980.

Haight, Gardner, Poor & Havens, New York City, for plaintiff; G. W. Paulsen, B. I. Weinstein and M. J. Machado, New York City, of counsel.

Robert J. Seymour, New York City, for defendant and third-party plaintiff; Virginia S. Price, New York City, of counsel.

Ruben Schwatz, Lasker & Schnall, New York City, for third-party defendant; Harold W. Paul, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, a Chilean corporation whose principal place of business is Santiago, Chile, brings this action against Israel Discount Bank ("IDB"), an Israeli corporation, for claims arising from a letter of credit issued by defendant for plaintiff's benefit, upon application of third-party defendant Suzette Fashions, Inc. ("Suz-ette"), a New York corporation. Suz-ette, in turn has asserted claims against plaintiff arising from the underlying contract between them.

Defendant has moved to dismiss the complaint for lack of subject matter jurisdiction, on the ground that there is no diversity jurisdiction between plaintiff and defendant who are both alien corporations.

Plaintiff, opposing the motion, claims that diversity jurisdiction exists under 28 U.S.C. § 1332(a)(2)[1] which permits district courts to entertain suits between an alien and a citizen of a state of the United States. Plaintiff argues that IDB should be deemed a citizen of New York for the purposes of diversity jurisdiction because either its principal place of business worldwide or its principal place of business within the United States is New York. Defendant, while contending that § 1332(c) is wholly inapplicable to alien corporations, concedes that its principal place of business within the United States is in New York, but maintains that its principal place of business worldwide is in Israel.

To prove that defendant's main place of business worldwide is in New York, plaintiff seeks extensive discovery into the number and dollar volume of IDB transactions in Israel, New York, and various other locations. In response, defendant has sought a protective order claiming that such discovery is both irrelevant and unduly burdensome.

The resolution of the motion to dismiss turns on the applicability of 28 U.S.C. § 1332(c) to alien corporations—a question

---

1. 28 U.S.C. § 1332 provides in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State, and foreign states or citizens or subjects there of; and

(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

\* \* \* \* \* \*

(c) For the purposes of this section . . , a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . .

(d) The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

that has long troubled the lower courts in this circuit.

It is well-settled that the presence of aliens on both sides of a controversy will defeat diversity jurisdiction. *See e. g., Merchants' Cotton Press and Storage Co. v. Ins. Co. of North America*, 151 U.S. 368, 385–86, 14 S.Ct. 367, 372–73, 38 L.Ed. 195 (1894); *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975); *Hercules Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101, 106 (S.D.N.Y.1976) (Cannella, J.).

Prior to 1958, both domestic and alien corporations were considered to be citizens solely of the states of their incorporation. *See Hercules Inc. v. Dynamic Export Corp., supra*, 71 F.R.D. at 106. In 1958, however, 28 U.S.C. § 1332 was amended, adding § 1332(c) which created dual citizenship for domestic corporations for purposes of diversity jurisdiction by deeming a corporation to be "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

■ The express purpose of the dual citizenship principle was to limit the number of cases coming to the federal courts in diversity. The amendment was designed to eliminate the evil of an essentially local business, by means of incorporation elsewhere, avoiding trial in the courts of the state where it conducts its principal business. S.Rep.No. 1830, 85th Cong., 2d Sess. 4 (1958); U.S.Code Cong. & Admin.News 1958, pp. 3099, 3101–02; *R. G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 654 (2d Cir. 1979). The reasoning behind the amendment was that the protection from possible local prejudice provided to out-of-staters by diversity jurisdiction is not needed by a corporation whose principal place of business is in the forum state.

It was perhaps inevitable that the question whether § 1332(c) applied to alien corporations would someday arise. The leading case holding that it does not is *Eisenberg v. Commercial Union Assurance Co.*, 189 F.Supp. 500 (S.D.N.Y.1960) (Dimock, J.). *Eisenberg* based its conclusion on statutory construction, finding that Congress had used a capital S when referring to states of the Union, and a lower case s when referring to foreign states. Thus, the court held that unless a corporation is incorporated in a domestic state, it would not fall within either half of § 1332(c). Just as it could not be deemed a citizen of the State by which it has been incorporated, so it could not be deemed a citizen of the State where it has its principal place of business. *Id.* at 502.

Many lower court decisions in this circuit have followed *Eisenberg*, holding that § 1332(c) does not apply to aliens and applying the traditional rule that for diversity purposes alien corporations are to be deemed citizens only of the foreign state of their incorporation. *E. g., Union Marine General Ins. Co. v. American Expert Lines, Inc.*, 274 F.Supp. 123, 125 n.1 (S.D.N.Y.1966) (Cooper, J.); *Tsakonites v. Transpacific Carriers Corp.*, 246 F.Supp. 634, 641 (S.D.N.Y.1965) (Cooper, J.), *aff'd*, 368 F.2d 426 (2d Cir.), *cert. denied*, 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 434 (1967); *Chemical Transp. Corp. v. Metropolitan Petroleum Corp.*, 246 F.Supp. 563 (S.D.N.Y.1964) (Cooper, J.); *Mazzella v. Pan Oceana A/S Panama*, 232 F.Supp. 29, 31 n.1 (S.D.N.Y.1964) (Bonsal, J.); *See Hercules Inc. v. Dynamic Export Corp., supra.*

Dicta in *Eisenberg* opinion had indicated that if § 1332(c) did apply to alien corporations, it could be applied fairly only to corporations whose principal place of business worldwide was in a state of the United States, for such a corporation could, perhaps, be deemed to have adopted that state as its actual residence and would not be subject to prejudice against outsiders there. *Eisenberg v. Commercial Union Assurance Co., supra*, 189 F.Supp. at 502.

This suggestion was followed in *Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.*, 358 F.Supp. 1001, 1005–07 (N.D. Ill.1973), the leading case holding that § 1332(c) should apply to alien corporations that have a principal place of business in a United States state.

The *Southeast* court reasoned that just as a domestic corporation whose main business place is in the forum state should not be

able to invoke federal jurisdiction merely by being incorporated in a sister state, so an alien corporation whose operations are located within a state should be deemed a state citizen despite foreign incorporation. This analysis, the court reasoned, would effectuate the Congressional purpose of eliminating diversity except where it is truly needed to protect an outsider from local prejudice. *Id.* at 1007. The court rejected *Eisenberg*'s statutory construction, seeing "no ground for concluding that because the first half of [§ 1332(c)] does not apply to foreign corporations, that the second half should have no application to them," if they have their principal place of business in the United States. *Id.*

Several courts in this district have followed the *Southeast* analysis. *See Oppenheimer Reinsurance Co. v. Alexander & Alexander, Inc.,* 79 Civ. 2151 (S.D.N.Y. December 27, 1979) (Pierce, J.); *Arab International Bank & Trust Co. v. National Westminster Bank Ltd.,* 463 F.Supp. 1145, 1147 (S.D.N.Y.1979) (Sand, J.); *Bergen Shipping Co. v. Japan Marine Services, Ltd.,* 386 F.Supp. 430, 431–34 (S.D.N.Y.1974) (Conner, J.); *Jerro v. Home Lines, Inc.,* 377 F.Supp. 670, 672 (S.D.N.Y.1974) (Gurfein, J.).

It should be noted that the dual citizenship principle of § 1332(c), when applied to domestic corporations, could serve only to decrease the number of diversity cases brought in federal court, because a domestic corporation cannot choose to assert only one of its two citizenships. Thus, if a corporation were incorporated in state A with its principal place of business in state B, it would be nondiverse from citizens of both A and B. *Hercules Inc. v. Dynamic Export Corp., supra,* 71 F.R.D. at 106.

The same result, however, does not obtain for alien corporations. When an alien is suing or being sued by a citizen of a state of the United States, applying § 1332(c) will destroy diversity only in cases where the alien's principal place of business is the state of the adverse litigant's citizenship. *E. g. Oppenheimer Reinsurance Co. v. Alexander & Alexander, supra; Jerro v. Home Lines, Inc., supra,* 377 F.Supp. at 672;

*Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc., supra,* 358 F.Supp. at 1007. Where there are aliens on both sides of the suit, as in the instant suit, however, applying § 1332(c) may create diversity if one of the aliens is deemed a citizen of the state of its principal place of business. *E. g., Arab International Bank & Trust v. National Westminster, Bank, supra,* 463 F.Supp. at 1147, 1149; *Bergen Shipping Co. v. Japan Marine Services, Ltd., supra,* 386 F.Supp. at 434. This result would frustrate the Congressional intent of reducing the number of diversity cases.

Because application of § 1332(c) to alien corporations may create diversity as often as it destroys it, and because this problem was not addressed by Congress in 1958, *see Bergen Shipping Co., Ltd. v. Japan Marine Services, Ltd., supra,* 386 F.Supp. at 433, a variety of solutions have been attempted by courts in this circuit.

One solution, obviously, is to refuse to apply 1332(c) to aliens, that is, continue the traditional rule. A second approach is that adopted by *Bergen Shipping v. Japan Marine Services, Ltd., supra.* That is, deem the alien corporation to be a citizen of the place—alien or domestic state—where it has its principal place of business, regardless of whether the result would create or destroy diversity.

Another solution would be to apply the statute so that it creates dual citizenship for alien corporations as well as for domestic ones. Thus a foreign corporation with a principal place of business in state A would be nondiverse from both citizens of A and from other aliens. *See Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 477 F.Supp. 615, 618 (S.D.N.Y.1979) (Sand, J.); *Hercules Inc. v. Dynamic Export Corp., supra,* 71 F.R.D. at 107. These cases properly criticize the *Bergen Shipping* analysis as making only one citizenship of the alien corporation relevant for diversity purposes—that of its principal place of business worldwide.

A fourth approach might be that suggested by plaintiff's alternative theory—that an alien corporation should be deemed a citizen

of the state in which it has its principal place of business within the United States. This application of the statute has been suggested by Professor Moore, *see* 1 Moore, Federal Practice, at ¶ 717.45–47, but has been rejected by courts in this district, see *Arab International Bank & Trust v. National Westminster Bank, supra,* 463 F.Supp. at 1147 & n.2; *Eisenberg v. Commercial Union Assurance Co., supra,* 189 F.Supp. at 502, as unfair and illogical; the alien's contact with any state may be too slight to assume that it is an essentially local concern that does not need the protection of diversity jurisdiction.

■ Although the Second Circuit has not yet squarely addressed this issue, dictum in a recent decision, *Clarkson Co. v. Shaheen,* 544 F.2d 624, 628 n.5 (2d Cir. 1976) indicates that, in the view of the Court of Appeals, the traditional rule should be followed until Congress amends the statute. *See also Windert Watch Co., Inc. v. Remex Electronics Ltd.,* 468 F.Supp. 1242, 1244 n.2 (S.D.N.Y.1979) (Lasker, J.). In view of the variety of judicial approaches to the problem of alien corporations, a statutory, rather than a judicial solution would be appropriate.

In addition, unique policy considerations relevant to foreign corporations may come into play which Congress is best suited to address. *See Chemical Transportation Corp. v. Metropolitan Petroleum Corp., supra,* 246 F.Supp. at 567.

For the reasons discussed above, I follow the suggestion of the Court of Appeals and hold that this court lacks subject matter jurisdiction over the controversy between plaintiff and defendant. Defendant's motion to dismiss is granted. It is unnecessary, therefore, to reach defendant's motion for a protective order.

Diversity jurisdiction does exist, however, over the controversy between third-party defendant Suz-ette and plaintiff. Plaintiff has moved for leave to amend its answer to Suz-ette's claim, a motion which both Suzette and IDB oppose.

After filing suit in this court, plaintiff instituted a similar action against IDB in New York State court, and had the state court action stayed pending determination of the jurisdictional issue here. Because the state court now appears to be the only forum in which all the disputes in this case can be resolved in one proceeding, it is likely that Suz-ette will choose to assert its claims against plaintiff in that action. Therefore, plaintiff's motion to amend will not be decided at this time. Rather, proceedings in this court will be stayed to allow the third-party defendant to elect its forum. Third-party defendant will inform the court within 90 days from the date of this decision whether it intends to proceed here or press its claims in state court.

IT IS SO ORDERED.