## TRANS WORLD HOSPITAL SUPPLIES LIMITED, Plaintiff,

v.

## HOSPITAL CORPORATION OF AMERICA, Defendant.

### No. 80–3750.

United States District Court,
M. D. Tennessee,
Nashville Division.

July 6, 1982.

---

Donelson M. Leake, Knoxville, Tenn., for plaintiff.

Ames Davis, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

Plaintiff Trans World Hospital Supplies Ltd. [Trans World] brought this action in December 1980 against defendant Hospital Corporation of America [HCA] for an alleged breach of contract and injuries related thereto. The dispute arises out of an alleged agreement between Trans World and HCA under which Trans World ostensi-bly acted as a purchasing agent for HCA and obtained medical supplies and services for King Faisal Specialist Hospital and Research Centre, located in Riyadh, Saudi Arabia, which HCA managed. Trans World alleges that it acted as purchasing agent for HCA from August 1977 until February 1980, when HCA terminated the relationship. Trans World contends that HCA owes it $325,000, which HCA has refused to pay, for expenses and debts incurred by Trans World in the performance of its duties under the contract. Trans World has brought this action to recover that sum and to receive compensation for injury to its reputation and loss of business that it allegedly suffered as a result of HCA's refusal to pay.

On April 16, 1982, HCA filed a motion for summary judgment in which it declared essentially that it never entered into any contractual agreement of any sort with Trans World regarding the King Faisal Hospital. HCA argued that Trans World's contract was instead with Hospital Corporation of America Service & Supply Co., Ltd. [HCA S&S], a subsidiary of HCA. HCA had previously raised this matter in its answer to Trans World's complaint, asserting as a defense that Trans World had failed to join HCA S&S, which HCA deemed an indispensable party.

On April 16, 1982, apparently in response to HCA's answer (if not its summary judgment motion), Trans World asked the Court for permission to file an amended and supplemental complaint pursuant to Rule 15, F.R.Civ.P. The Court granted Trans World's motion. In its amended and supplemental complaint, Trans World named HCA S&S as an additional defendant.

HCA has now asked the Court to reconsider its decision to allow Trans World to join HCA S&S as a defendant in this action. HCA contends that joinder of HCA S&S is improper because it would destroy the Court's diversity jurisdiction. HCA argues that because Trans World is a United Kingdom corporation and HCA S&S is incorporated under the laws of the Cayman Islands, the complete diversity of citizenship

necessary for the Court to exercise jurisdiction over this matter under 28 U.S.C. § 1332 would be absent. In other words, HCA contends that there would be alien corporations on either side of this dispute, and such an alignment precludes diversity jurisdiction. Trans World asserts in response that joinder of HCA S&S would not destroy the diversity of the parties because (1) HCA S&S's principal place of business is in the United States (Tennessee) and (2) HCA's state of citizenship, Tennessee, can be attributed to HCA S&S under an "alter ego" theory of jurisdiction.

The Court has considered the arguments of each side and has determined that no clear rule of law exists to control this issue. Having reviewed the relevant case law in light of the particular facts of this case, however, the Court concludes that joinder of HCA S&S would not destroy the Court's diversity jurisdiction. Because HCA S&S's principal place of business is in Tennessee, HCA S&S may be considered a citizen of that state for purposes of jurisdiction under section 1332. The requisite diversity of citizenship thus remains. Consequently, HCA's motion to reconsider is denied.

### The Statute Involved

■ At the heart of the dispute between HCA and Trans World is the interpretation to be given to 28 U.S.C. § 1332, the statute that generally provides diversity jurisdiction to the federal district courts. Section 1332(a)(2) declares that

> [t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state . . . .

As is apparent from the wording of this provision, the federal district courts have jurisdiction of cases, such as the instant action, in which a citizen of a particular state in this country is on one side of the dispute and an alien is on the other side. As with other types of diversity cases, however, such as those between citizens of different states, when more than one party is on one side of an action, complete diversity of citizenship must exist between all opposing parties or the jurisdiction of the federal district court will be eliminated. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). In other words, when an alien sues or is sued in federal district court, all opposing parties must be citizens of a state of the United States. The presence of aliens on both sides of a controversy will destroy diversity jurisdiction. *Field v. Volkswagenwerk AG*, 626 F.2d 293 (3d Cir. 1980); *IIT v. Vencap, Ltd.*, 519 F.2d 1001 (2d Cir. 1975).

In the instant case, the plaintiff, Trans World Hospital Supplies Ltd., is chartered under the laws of the United Kingdom and maintains its principal place of business in Ashford Middlesex, England. The defendant, Hospital Corporation of America, is a Tennessee corporation with its principal place of business in Nashville, Tennessee. For purposes of diversity jurisdiction, plaintiff Trans World is deemed a citizen of England and defendant HCA is deemed a citizen of Tennessee. Were these the only parties to this action, the jurisdiction of this Court under 28 U.S.C. § 1332(a)(2) would be unquestionable, as there is an alien on one side of the dispute and a citizen of a state of the United States on the other side.

The jurisdictional difficulty in this case arises, however, because of the desire of Trans World to join Hospital Corporation of America Service and Supply Co., Ltd., as an additional defendant. HCA S&S is incorporated under the laws of the Cayman Islands. HCA S&S, however, is a subsidiary of HCA and presently maintains its principal place of business in Nashville, Tennessee.[1] If HCA S&S is deemed a citizen of the Cayman Islands, its place of incorpora-

---

1. HCA S&S originally had its principal place of business in Houston, Texas, and maintained it there throughout the period covered by Trans World's complaint. In early 1981, however, HCA closed its Houston office and relocated its principal place of business to Nashville. In its

tion, the diversity jurisdiction of this Court over this action would be defeated; aliens would be present on both sides of the dispute. On the other hand, if HCA S&S is deemed a citizen of Tennessee for jurisdictional purposes, the diversity jurisdiction of the Court would remain intact; complete diversity of citizenship would exist among the parties on opposing sides of the action.[2] The question for this Court to resolve thus is whether HCA S&S can be considered a citizen of Tennessee or is instead solely a citizen of the Cayman Islands.

Resolution of this jurisdictional issue depends upon whether 28 U.S.C. § 1332(c) is applicable to alien corporations like HCA S&S. Section 1332(c) provides in relevant part:

> For the purposes of this section and section 1441 of this title, a corporation shall

be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . .

When applied to domestic corporations—as clearly intended by its language—section 1332(c) establishes dual citizenship for such corporations for jurisdictional purposes: (1) the state of incorporation and (2) the state of the corporation's principal place of business. If applicable to alien corporations, section 1332(c) would establish dual citizenship for them as well. In that case, this Court's jurisdiction of this action would not be affected since HCA S&S would be considered a citizen of Tennessee for jurisdictional purposes; complete diversity of citizenship among the opposing parties would still exist.[3] If section 1332(c) is inapplica-

amended and supplemental complaint, Trans World does not indicate whether it considers HCA S&S a citizen of Tennessee or Texas. From a review of the pleadings, the Court has concluded that Tennessee should be considered HCA S&S's principal place of business for jurisdictional purposes. The Court notes that defendant HCA contends that HCA S&S presently has *no* principal place of business, in that HCA S&S allegedly ceased operations in April 1981, and that HCA S&S therefore is not subject to the Court's jurisdiction. The Court finds HCA's contention unpersuasive. HCA S&S's economic status, whatever it may be, may influence the ultimate issue of liability in this case, but it does not affect the Court's consideration of HCA S&S's principal place of business, especially given the nature of HCA S&S's relationship with its parent company, HCA, which is also located in Nashville.

The Court also notes parenthetically that an argument exists for considering Houston, Texas, as HCA S&S's principal place of business with regard to the allegations contained in Trans World's amended complaint. Under the "relation back" provision of Rule 15(c), F.R. Civ.P., the Court could theoretically look to HCA S&S's principal place of business at the time of Trans World's original complaint in December 1980, which indisputably was in Houston. The attribution of Texas citizenship to HCA S&S would support the Court's conclusion regarding jurisdiction, since in this particular case the only determinative consideration is whether HCA S&S can be deemed a citizen of a state in the United States. The Court expresses no opinion on this possible alternative citizenship for HCA S&S, however, given its conclusion that HCA S&S can be considered

a citizen of Tennessee for jurisdictional purposes.

2. Jurisdiction would also remain if HCA S&S were considered a citizen of Texas. *See* note 1 *supra.*

3. HCA attempts to argue that even if the Court concludes that state citizenship can be attributed to HCA S&S, that citizenship is additional to its alien citizenship such that diversity jurisdiction is still precluded. In other words, HCA argues that HCA S&S would retain its alien citizenship along with its state citizenship and that the existence of HCA S&S's alien citizenship makes jurisdiction impossible in this case. HCA's contention has superficial appeal, and in fact, a similar argument has been considered legitimate by at least one court. *See Hercules, Inc. v. Dynamic Export Corp.,* 71 F.R.D. 101 (S.D.N.Y.1976). As discussed *infra,* this Court finds HCA's position untenable, however. Certainly, an alien corporation would technically possess dual citizenship under section 1332(c). The purpose of such citizenship, however, would in part be to ensure that an alien-chartered corporation that is in reality a local enterprise is treated in the same way as a domestic corporation with similar circumstances. As discussed in the text *infra,* the thrust of section 1332(c) is that the contacts of a corporation to a given locality are to be examined in determining the possibility of local prejudice that it may suffer in the state courts. Whether the corporation has its principal place of business in the particular state is a barometer for considering the likelihood of bias. HCA's interpretation of section 1332(c) would make that consideration irrelevant. While paying lip service to the no-

ble, however, dual citizenship would not exist, and HCA S&S would be considered a citizen only of the Cayman Islands, since a corporation is traditionally deemed a citizen of the place of its incorporation. *See Steamship Co. v. Tugman*, 106 U.S. (16 Otto) 118, 1 S.Ct. 58, 27 L.Ed. 87 (1882); *Marshall v. Baltimore & Ohio Railroad Co.*, 57 U.S. (16 How.) 314, 14 L.Ed. 953 (1853). In that case, the diversity jurisdiction of the Court in this matter would be defeated.

### The Applicability of Section 1332(c) to Alien Corporations

By its language, section 1332(c) offers no ready answer to the question of whether its establishment of dual citizenship extends to alien corporations. Section 1332(c) was enacted in 1958 as an amendment to the general diversity jurisdiction statute in an effort by Congress to remove from the federal courts essentially local matters involving citizens of a state and corporations that are actually based in that state but that, for whatever reasons, are legally incorporated in another state. Pub.L.No.85–554, § 2, 72 Stat. 415. *See* S.Rep.No.1830, 85th Cong., 2d Sess., *reprinted in* [1958] U.S.Code Cong. & Ad.News 3099. Congress focused its attention on domestic corporations, however, and nowhere in the legislative history of the amendment is there an indication that Congress even considered the problem of alien-chartered but domestically located corporations.

Those courts that have confronted the issue of section 1332(c)'s applicability to alien corporations have divided in their conclusions, and each has drawn its own inferences from the lack of express congressional discussion of the problem. The Sixth Circuit has yet to address the question, and in the absence of any controlling precedent, this Court has endeavored to examine the existing case law with an eye toward discerning the best rule of law to fit the facts of the case at hand. From its examination and its consideration of the purpose of sec-

tion 1332(c), the Court concludes that section 1332(c) does apply to alien corporations. Consequently, joinder of HCA S&S here does not destroy the Court's diversity jurisdiction in this action.

The leading case holding that section 1332(c) does not apply to alien corporations is *Eisenberg v. Commercial Union Assurance Co.*, 189 F.Supp. 500 (S.D.N.Y.1960). In *Eisenberg* the plaintiff was a citizen of New York. The defendant was a British corporation with its principal place of business in London. The defendant had numerous places of business in the United States, but its principal place of business within the United States was in New York. The defendant had asked the court to dismiss the suit against it for lack of diversity of citizenship, arguing that the state of its principal place of business in the United States— New York—should be considered its state of citizenship for purposes of jurisdiction under section 1332(c). The court rejected the defendant's argument and ruled that section 1332(c) was not intended to apply to alien corporations. Analyzing the language of subsection (c) along side that of section 1332 overall, the court stated,

> It is to be noted that the statute differentiates between States of the United States and foreign states by the use of a capital S for the word when applied to a State of the United States. Subdivision (c), therefore, in dealing with the *place of incorporation* refers only to a corporation incorporated in a State of the United States. When subdivision (c) goes on to deal with *principal place of business* it refers to the same corporation and thus only to a corporation incorporated in a State of the United States. The subdivision is not susceptible of the construction as if it read "all corporations shall be deemed citizens of the states by which they have been incorporated and of the States where they have their principal places of business." Unless a corporation is incorporated by a State of the United

tion that an alien corporation is sufficiently well established in a state to be deemed a citizen of that state, HCA's position would ef-

fectively ignore that relationship. *See* the Court's discussion *infra*.

States it will not be deemed a citizen of the State where it has its principal place of business.

189 F.Supp. at 502.

While the *Eisenberg* court thus concluded that section 1332(c) did not apply to alien corporations, it admitted that its conclusion could be erroneous. The court stated that a plausible interpretation of the section would be that the citizenship of an alien corporation should be determined by the site of its principal place of business. Although the court preferred its first conclusion that section 1332(c) was inapplicable, the court declared that on the facts of *Eisenberg*, the result—denial of the defendant's motion— would be the same, since London was the principal place of business of the defendant. *Id.* The court rejected outright, however, the contention that an alien corporation's citizenship should be determined by its principal place of business in the United States, rather than worldwide.[4]

In the aftermath of *Eisenberg*, the courts have split in their interpretations of section 1332(c). Those courts that have ruled section 1332(c) inapplicable to foreign corporations have relied both upon *Eisenberg*'s reasoning and their own construction of the legislative history of the section. *Eisenberg*'s somewhat ambiguous holding, however, has also provided support for those courts holding section 1332(c) applicable, and the courts have debated whether the *Eisenberg* court's discussion of the two tests was actually setting forth alternative holdings or merely espousing dicta with regard to one. *Eisenberg*, then, provides no real guidance on this issue.

An impressive analysis of section 1332(c) was made by the court in *Chemical Transportation Corp. v. Metropolitan Petroleum Corp.*, 246 F.Supp. 563 (S.D.N.Y.1964), a few years after the *Eisenberg* decision. Like the *Eisenberg* court, the *Chemical Transportation* court ruled that section 1332(c) does not apply to alien corporations. In addition to the *Eisenberg* analysis, the court relied heavily upon its determination that in enacting section 1332(c) Congress simply never considered whether the section would apply to alien corporations. The court noted, however, that Congress had intended with the enactment of the section to restrict the diversity jurisdiction of the federal courts, at least with regard to domestic corporations. Given those considerations, the court concluded that it must read section 1332(c) narrowly and as applicable only to domestic corporations. As the court noted,

> [I]f § 1332(c) is to apply to alien corporations, it is for Congress and not this Court to so provide.... [T]he wording of the amendment, the absence of explicit Congressional consideration of the issue here involved and the absence of guiding Congressional policy ..., compel us to hold that § 1332(c) does not apply to alien corporations.

246 F.Supp. at 566.

Similar reasoning was used by the Court in *Salomon Englander Y CIA, LTDA v. Israel Discount Bank Ltd.*, 494 F.Supp. 914 (S.D.N.Y.1980), in ruling that section 1332(c) applies only to domestic corporations. The *Salomon* court noted growing

---

**4.** In rejecting this contention, however, the court utilized reasoning that gave support to the view that an alien is a citizen of the state of its worldwide principal place of business. While asserting that a corporation should not be deemed a citizen of a state if that state contains only the corporation's United States principal place of business, as opposed to its worldwide location, the court noted that a more compelling argument can be made for considering the corporation a citizen of the state in which its worldwide principal place of business is located. The court stated,

> Even if, however, the amendment carried out this purpose [to reduce federal diversity jur-

isdiction] by taking away all foreign state corporations whose principal place of business was within the State, as well as all State corporations whose principal place of business was within the State, the right of removal of a case brought by a resident of that State, it was not the purpose of the amendment to abandon the protection from local prejudice against outsiders as the reason for diversity jurisdiction. It is a fair inference that a corporation which has located its principal place of business in a State has adopted that State as its actual residence and will not be subject to prejudice against outsiders.

189 F.Supp. at 502.

disagreement among the federal courts concerning section 1332(c)'s applicability to alien corporations. In light of the absence of judicial consensus on section 1332(c)'s interpretation, as well as the lack of any evidence of congressional consideration of the issue at the time of section 1332(c)'s enactment, the court concluded that the question was better suited for resolution by Congress than the courts.[5] Consequently, the court declined to exercise jurisdiction and ruled that section 1332(c) was inapplicable to alien corporations.[6]

In contrast to the above decisions, a number of courts have taken the view that section 1332(c) does apply to alien corporations. These courts uniformly hold that when an alien corporation maintains its principal place of business in a state of the United States, it is to be deemed a citizen of that state for purposes of diversity jurisdiction. Similarly, when an alien corporation maintains its principal place of business outside the United States, these courts have held that the corporation is not a citizen of the United States.

The leading case holding that section 1332(c) applies to alien corporations is *Southeast Guaranty Trust Co., Ltd. v. Rodman & Renshaw, Inc.*, 358 F.Supp. 1001 (N.D.Ill.1973). In *Southeast*, a Bahamian corporation sought to bring suit in federal court against several defendants, some of whom were citizens of the state of Illinois. The defendants, arguing that section 1332(c) applied to both alien and domestic corporations, contended that because the plaintiff maintained its principal place of business in Illinois, complete diversity of citizenship was lacking. The court agreed with the defendants.

In ruling that section 1332(c) extended to alien corporations, the *Southeast* court expressly rejected the *Eisenberg* court's literal statutory interpretation. The court noted that section 1332(c) presented two methods for determining corporate citizenship: state of incorporation and principal place of business. The court stated that while *Eisenberg*'s statutory analysis might be reasonable when applied to the first component of the section—state of incorporation—it was far less so with regard to the second part—principal place of business. The court stated,

There are many instances in which the second half of section 1332(c) does not apply to United States corporations, i.e., where a corporation maintains its principal place of business in the same state in which it is incorporated. Since it makes no sense at all for a corporation to be twice a citizen of the same state, there must be read in at the end of the section, "if the State of its principal place of business is different from the State of its incorporation." Similarly, we see no ground for concluding that because the first half of the section does not apply to foreign corporations, that the second half should have no applicability to them at all. It seems no greater extension of the language to read in, when dealing with foreign corporations, "if its principal place of business is in the United States." Obviously Congress would only use the word State with a capital S, since if a

---

5. The court noted that although the Second Circuit had not yet directly addressed the issue, that court had indicated a preference that Congress clarify section 1332(c)'s ambiguity rather than the courts. 494 F.Supp. at 918. *See Clarkson Co. v. Shaheen*, 544 F.2d 624, 628 n.5 (2d Cir. 1976). At least one commentator, while contending that section 1332(c) probably should apply to alien corporations, has indicated a similar preference that the courts should await congressional action before including alien corporations within the section's ambit. *See* 1 *Moore's Federal Practice* ¶ 0.75[3] (2d ed. 1980).

6. Several additional courts have indicated agreement with the conclusion that section 1332(c) is inapplicable to alien corporations. *See Corporacion Venezolana deFomento v. Vintero Sales Corp.*, 477 F.Supp. 615 (S.D.N.Y. 1979); *Hercules Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101 (S.D.N.Y.1976); *Union Marine & General Insurance Co. v. American Export Lines, Inc.*, 274 F.Supp. 123 (S.D.N.Y.1966); *Tsakonites v. Transpacific Carriers Corp.*, 246 F.Supp. 634 (S.D.N.Y.1965), *aff'd.* 368 F.2d 426 (2d Cir.), *cert. denied*, 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 434 (1967); *Mazzella v. Pan Oceanica A/S Panama*, 232 F.Supp. 29 (S.D.N.Y.1964).

corporation's principal place of business was in a foreign state it would have no effect whatsoever on its citizenship for diversity purposes in the courts of the United States.

358 F.Supp. at 1007.

The court rejected the contention that congressional silence on the issue during section 1332(c)'s enactment indicated that the section's applicability was limited to domestic corporations. Analyzing the thrust of section 1332(c), the court held that applying the section to alien corporations would be consistent with the policy underlying the provision. The court declared,

> While it is true that Congress apparently gave no explicit consideration to the effect of the amendment on alien corporations, our interpretation of its applicability better serves the express Congressional purpose of the amendment which was to limit the diversity jurisdiction of the federal courts. By enacting § 1332(c), Congress sought to preclude any technical finding of diversity, when, in fact, no such diversity existed. When a corporation, while incorporated in another state, maintained its principal place of business in the same state in which its legal adversary was a citizen, it was felt neither to need nor deserve the protection of a federal court from any possible state court bias against an outsider. This rationale is no less compelling when applied to a corporation which has been chartered in a foreign country but maintains its principal place of business in the United States.

*Id.* (citation omitted).

Thus concluding that section 1332(c) did apply to alien corporations, the *Southeast* court determined that the plaintiff's principal place of business was in Illinois. Because complete diversity did not exist among all opposing parties in the suit, the court ruled that it lacked jurisdiction over the dispute.

Other courts have agreed with the Southeast's court's interpretation of section 1332(c). In *Bergen Shipping Co. v. Japan Marine Services, Ltd.,* 386 F.Supp. 430 (S.D. N.Y.1974), the court echoed the sentiment that "the same rationale which precludes out-of-state but locally based corporations from invoking federal jurisdiction against locally incorporated corporations would preclude alien, but locally based corporations, from invoking such jurisdiction." *Id.* at 433. Given that consideration, the *Bergen* court declared that it was "compelled to conclude that a corporation, be it alien or otherwise, with its principal place of business in a State should be deemed a citizen of that State." *Id.*

While the *Southeast* court's ruling restricted its jurisdiction, the *Bergen* court's conclusion supported the existence of diversity jurisdiction in that case. Factually apposite to the instant case, *Bergen* involved a suit by a Liberian corporation, whose principal place of business was in New York, against a Japanese corporation, whose principal place of business was in that country. Applying section 1332(c) to the parties, the court concluded that the plaintiff was a citizen of New York for jurisdictional purposes and that consequently diversity of citizenship existed. Although the court realized that section 1332(c)'s underlying purpose was to restrict diversity jurisdiction, the court nevertheless believed that its conclusion was consistent with the congressional intent. As the court stated,

> While we are cognizant that the application of the *Southeast* rule in the present case would enlarge federal jurisdiction, rather than restricting it, which was the underlying purpose of Section 1332(c), and the result of the Southeast decision, it at least is not inconsistent with the *stated* purpose of the statute, i.e., eliminating the "evil" of allowing purely local controversies to be resolved in the federal courts.

*Id.* at 434.

More recently, the court in *Richmond Construction Corp. v. Hilb,* 482 F.Supp. 1201 (M.D.Fla.1980), held that section 1332(c) prevented it from exercising jurisdiction over a suit between several Florida corporations and a number of alien corporations whose principal places of business were in Florida. The court stated that applying

section 1332(c) to alien corporations would be consistent with the overall policy intent of the provision. In the *Richmond* court's view, "Applying § 1332(c) to alien corporations would further both the overall purpose of the bill (reduction of district court caseload...) and the specific purpose of the amendments to § 1332 (eliminating the unfair advantage given the actually-local, but fictionally foreign corporation...)." *Id.* at 1203 (citations omitted).

Finally, in *Jerguson v. Blue Dot Investment, Inc.*, 659 F.2d 31 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982), the Fifth Circuit, after an excellent discussion of the legislative history of and case law discussing section 1332(c), concluded that the section did indeed apply to foreign corporations. Rejecting *Eisenberg* and its progeny, the Fifth Circuit employed an analysis similar to that of the *Southeast* court and held that while section 1332(c)'s reference to the state of incorporation could be limited to domestic corporations, its focus on the principal place of business could not. The court stated,

> Reading the word "State" to refer only to an American state, however, does not necessitate the conclusion that the principal place of business part of section 1332(c) cannot be applied to alien corporations. We disagree with the analysis in *Eisenberg* that since the first part of section 1332(c) dealing with the place of incorporation necessarily applies only to a business incorporated in the United States, the second part of section 1332(c) dealing with the principal place of business must also be limited to domestic corporations.
>
> It is clear the statute itself does not provide adequate guidance. Nothing in the statutory formula suggests it was to be limited to domestic corporations. The statute refers merely to "a corporation." It can be and has been interpreted in conflicting ways. It does not appear that Congress specifically considered the ques-

tion of diversity jurisdiction and alien corporations in 1958. It cannot be inferred from Congress' silence that Congress intended the statute to be construed one way or the other.

*Id.* at 35.

In *Jerguson*, the plaintiffs, citizens of Florida, sought to sue a Panamanian corporation in federal court. The corporation, however, had its principal—in fact, its only—place of business in Florida. The district court had dismissed the case for lack of diversity jurisdiction, and the Fifth Circuit affirmed the dismissal, deeming the defendant corporation a citizen of Florida under section 1332(c). The Fifth Circuit explained its conclusion thusly:

> Congress was endeavoring to define in which states *in the United States* a corporation would be deemed a citizen for purposes of diversity jurisdiction. Congress intended to limit the diversity jurisdiction of the federal courts to those out of state citizens who should be free of local bias. Congress decided that there was no need for federal court protection of a corporation with its principal place of business in the same state in which its legal adversary is a citizen, even though it is incorporated elsewhere. Applying section 1332(c) to alien corporations effectuates that congressional purpose. The realities of the situation here support this result. Florida is not just Blue Dot's principal place of business, it is its only place of business. There is no reason to treat it differently from, for example, a Delaware corporation which has its principal place of business in Florida. We therefore hold that a foreign corporation is a citizen for diversity jurisdiction purposes of a state where it has its principal place of business.

*Id.*[7]

As the foregoing discussion reveals, disagreement exists among the courts concern-

---

7. Several other courts have expressed general agreement with the view that section 1332(c) can be applied to foreign corporations. *See Grimandi v. Beech Aircraft Corp.*, 512 F.Supp. 764 (D.Kan.1981); *R. W. Sawant & Co. v. Ben-* *kozloff, Inc.*, 507 F.Supp. 614 (N.D.Ill.1981); *Arab International Bank & Trust Co. v. National Westminister Bank Ltd.*, 463 F.Supp. 1145 (S.D.N.Y.1979); *Jerro v. Home Lines, Inc.*, 377 F.Supp. 670 (S.D.N.Y.1974). At least one set of

ing section 1332(c)'s applicability to alien corporations. The more recent and, in the opinion of this Court, better reasoned decisions, however, hold that the section is applicable and that an alien corporation is to be deemed a citizen of the state in which it has its principal place of business. It makes little sense, as the *Ferguson* court indicated, to treat an alien corporation differently from a domestic corporation if the alien corporation maintains its principal place of business in the United States. The fact that a corporation possesses a foreign charter should not obscure the realities of a corporation's conduct of its business. Diversity jurisdiction is intended to provide an alternative federal forum to nonlocal parties who might somehow suffer bias in a state court. When a domestic corporation maintains its principal place of business in a given state in the United States, no danger of local bias against that corporation can be said to exist, even if it is incorporated in another state, and it is considered a citizen of that state for purposes of diversity jurisdiction. The same reasoning holds true for an alien corporation. Despite its incorporation in a foreign country, if an alien corporation maintains its principal place of business in a state of the United States, no compelling reason exists that it should not be deemed a citizen of that state. It is, in all practical respects, identical to any domestic corporation with its principal place of business in that state.

In the case before this Court, application of the guidelines of section 1332(c) results in the recognition of Tennessee citizenship for defendant HCA S&S. While, as the case law demonstrates, the recognition of such state citizenship for an alien corporation has generally resulted in the absence of complete diversity, here HCA S&S's Tennessee citizenship ensures that diversity continues to exist. Certainly, some of those courts that have applied section 1332(c) to alien corporations justified their rulings in part on the ground that utilization of the section restricted the court's jurisdiction in particular cases, consistent with the general concern of Congress to curtail federal diversity jurisdiction over domestic corporations. A necessary corollary of the use of section 1332(c) to deny diversity jurisdiction in some cases, however, is that it will cause diversity to exist in others. One cannot hold section 1332(c) applicable to foreign corporations in some instances but not in others. Moreover, as the *Bergen* court emphasized, the creation of diversity jurisdiction in such a case is not inconsistent with the fundamental purpose of section 1332(c) to bar purely local controversies from federal courts.[8]

commentators has also expressed agreement. *See* 13 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3628 (1975).

8. It is this aspect of section 1332(c)'s purpose that, along with the reasons outlined in note 1, *supra*, led the Court to reject HCA's contention that the "dual" citizenship provided alien corporations would literally be dual and that diversity jurisdiction would still be precluded in this case. As the case law has related, the function of section 1332(c) is to deny federal court access to corporations that are in no danger of local bias in the state courts. A foreign-chartered but locally based corporation is clearly in no danger of such bias. Thus, it is deemed a citizen of the state of its principal place of business and is consigned to the local courts when suing or being sued by other citizens of the state. In such a case, the literal dual citizenship urged by HCA would not substantively affect the parties' rights, because essentially local disputes remain in the state courts.

In contract, in a situation such as that presented in this case, when a foreign-chartered and foreign-based corporation sues (or is sued by) a foreign-chartered but locally based corporation, HCA's position would deny the totally alien corporation access to the federal courts, where it would be protected from local bias. Under HCA's strict view of section 1332(c)'s establishment of dual citizenship, the locally based corporation would nonetheless be considered an alien citizen for jurisdictional purposes. Because aliens would then be on both sides of the controversy, the federal courts would lack jurisdiction, and the matter would have to be brought in state court. This result would be obviously unfair to the totally alien corporation. As discussed, the opposing alien-chartered corporation with its principal place of business in the state is for all practical purposes a local enterprise and would not suffer local bias against it. Indeed, it might be the beneficiary of bias in its favor because of its local presence. The totally alien corporation, on the other hand, would be clearly exposed to

Although application of section 1332(c) to foreign corporations thus "expands" the Court's jurisdiction in this particular case, there will no doubt be other instances in which it will prevent the Court from exercising jurisdiction. Indeed, as the cases show, recognition of state citizenship for alien-chartered corporations prevents the Court from hearing any dispute between the corporation and other citizens of the state of the corporation's principal place of business, because complete diversity of citizenship would be lacking. That is how it should be, because no danger of local bias against the corporation would exist.

Additionally, the application of section 1332(c) to alien corporations in no way expands the jurisdiction of the Court over suits between alien corporations and non-corporate citizens of states of the United States. Diversity jurisdiction in such cases already exists under the general provision of 28 U.S.C. § 1332(a)(2). In fact, the actual impact upon jurisdiction over such cases would be restrictive, as just discussed, since the Court could not adjudicate matters involving citizens of a state and an alien corporation with its principal place of business in that state.[9]

In light of the above considerations, the Court concludes that 28 U.S.C. § 1332(c) is applicable to alien corporations. For purposes of diversity jurisdiction an alien corporation is a citizen of the state in the United States in which the corporation maintains its principal place of business. Defendant HCA S&S is thus a citizen of the state of Tennessee, and the diversity jurisdiction of the Court in this action is not destroyed. Complete diversity of citizenship continues to exist with the joinder of HCA S&S as a defendant.[10]

Accordingly, defendant HCA's motion to reconsider is denied. The Court's previous Order permitting joinder of HCA S&S shall stand.

exactly the risk of local bias against it that the diversity jurisdiction of the federal courts is designed to prevent. The exercise of diversity jurisdiction in this case—and the consideration only of HCA S&S's Tennessee citizenship—thus further the underlying policy of section 1332(c), as well as that of section 1332 generally.

9. As noted *supra*, several courts opposing the application of section 1332(c) to alien corporations have done so on the ground that Congress, not the courts, should rectify the uncertainty that the section has created. Deferral to Congress is not an unappealing alternative in a matter like this about which there is such disagreement. The Court does not believe that that course is necessitated here, however, in light of the extensive discussion that has heretofore taken place concerning the policy underlying section 1332(c). The Court believes that application of section 1332(c) to foreign corporations supports the section's basic policy objectives and is not inconsistent with the overall congressional intent behind the provision.

10. In its brief in support of its amended and supplemental complaint joining HCA S&S as a defendant in this action, Trans World relied

heavily upon *Grimandi v. Beech Aircraft Corp.*, 512 F.Supp. 764 (D.Kan.1918). In *Grimandi*, the court employed an "alter ego" theory of jurisdiction in conjunction with section 1332(c) to attribute the principal place of business of an alien-chartered corporation's parent company to the alien corporation. The alien corporation's own principal place of business was in Canada, but the court ruled that under the alter ego approach it could be considered a citizen of Connecticut, the state of incorporation of its parent company. Using section 1332(c), the court then held that it had diversity jurisdiction over the action even though the plaintiffs were citizens of France. Trans World essentially asks this Court to employ similar reasoning, attribute HCA's Tennessee citizenship to HCA S&S, and then exercise jurisdiction under section 1332(c).

The Court finds Trans World's argument intriguing but declines to express an opinion on its validity. Given the Court's general conclusion regarding the applicability of section 1332(c) in this matter, it is not necessary that the Court address *Grimandi* and its implications.