**Andy JERGUSON, individually and on behalf of all others similarily situated, et al., Plaintiffs-Appellants,**

**v.**

**BLUE DOT INVESTMENT, INC., a Panamanian corporation, Defendant-Appellee.**

**No. 80–5735.**

United States Court of Appeals, Fifth Circuit.*
Unit B

Oct. 13, 1981.

Joseph S. Paglino, Miami, Fla., for plaintiffs-appellants.

Bruce J. Berman, Miami, Fla., Sepler & Berrin, Hialeah, Fla., for defendant-appellee.

Before RONEY, KRAVITCH and HATCHETT, Circuit Judges.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

RONEY, Circuit Judge:

Seeking to play an 18-hole golf course, threatened by a residential development, plaintiff and his foursome never got to drive off the first tee. The starter, in the robe of a district judge, ruled that plaintiff had paid his greens fees at the wrong pro shop. Whereupon plaintiff shouldered his golf bag and headed to this Court for a starting time. Unfortunately for the golfers plaintiff seeks to represent, we agree with the district court and rule the plaintiff off the course. He does not qualify to compete in tournament in a federal forum. In state court, he can play with a lower handicap.

The legal issue is whether, for diversity jurisdiction purposes under 28 U.S.C.A. § 1332(c), a foreign corporation is deemed to be a citizen of the state where it has its principal place of business. The district court ruled the defendant Panamanian corporation, with its principal place of business in Florida, was deemed to be a Florida citizen for diversity purposes, thereby destroying diversity of citizenship between the defendant corporation and the Florida plaintiff. We affirm.

The litigation involves an 18-hole golf course surrounded by a residential community known as North Dade Country Club Village. In October 1979, the developer of the community and owner of the golf course conveyed the golf course to Blue Dot Investment, Inc., a Panamanian corporation, which announced plans to build residences on 9 of the 18 holes. Plaintiff initiated this suit on behalf of himself and all others owning real property in the residential community, asserting legal and equitable interests in the golf course which would be jeopardized by the planned development. Blue Dot moved to dismiss the suit for lack of subject matter jurisdiction and other reasons. Although the complaint predicated jurisdiction both on diversity of citizenship and the existence of a federal question, the district court found no independent federal question and plaintiff has not appealed that portion of the order dismissing the suit.

Plaintiff and the putative class are Florida citizens and defendant is a corporation chartered under the laws of Panama with its principal and only place of business in Florida. Whether diversity jurisdiction exists therefore depends on whether the governing statute operates to make Blue Dot a citizen of Florida for diversity purposes. 28 U.S.C.A. § 1332(c) provides:

For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . .

This statute does not on its face explicitly apply to foreign corporations or limit its application to domestic corporations. The legislative history is silent regarding its effect on alien corporations. In deciding that "the principal place of business" part of the statute applies to both domestic and foreign corporations, we examine the language of the statute in light of the historical treatment of corporations for purposes of diversity jurisdiction and the specific congressional purpose in enacting section 1332(c).

Prior to 1958, for diversity purposes, a corporation was deemed to be a citizen only of the state of its incorporation. *See Marshall v. Baltimore & Ohio Railroad Co.*, 57 U.S. (16 How.) 314, 14 L.Ed. 953 (1853). This rule applied to alien corporations, regarded as citizens of their foreign country of incorporation. *Steamship Co. v. Tugman*, 16 Otto 118, 106 U.S. 118, 27 L.Ed. 87 (1882). Determining the citizenship of a corporation for purposes of diversity jurisdiction historically was entangled with the question of whether a corporation, as a mere legal entity, could be considered a citizen at all. For a detailed discussion of the early Supreme Court cases in this area, see 1 Moore's *Federal Practice* ¶ 0.75[3], at 709.80 *et seq.* (2d ed. 1980).

In 1958, however, Congress adopted subsection (c) of section 1332 as part of legislation designed to reduce the case load of the federal courts and to correct alleged abuses of diversity jurisdiction. By adopting subsection (c), Congress hoped to eradicate a

perceived abuse engendered by the citizenship by incorporation rule.

This fiction of stamping a corporation a citizen of the State of its incorporation has given rise to the evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another State. . . . This circumstance can hardly be considered fair because it gives the privilege of a choice of courts to a local corporation simply because it has a charter from another State, an advantage which another local corporation that obtained its charter in the home State does not have.

The underlying purpose of diversity of citizenship legislation . . . is to provide a separate forum for out-of-State citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the Federal courts. Whatever the effectiveness of this rule, it was never intended to extend to local corporations which, because of a legal fiction, are considered citizens of another State. It is a matter of common knowledge that such incorporations are primarily initiated to obtain some advantage taxwise in the State of incorporation or to obtain the benefits of the more liberal provisions of the foreign State's corporation laws. Such incorporations are not intended for the prime purpose of doing business in the foreign State. It appears neither fair nor proper for such a corporation to avoid trial in the State where it has its principal place of business by resorting to a legal device not available to the individual citizen.

S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* [1958] U.S. Code Cong. & Ad. News 3099, 3101–02. To correct this alleged abuse Congress provided that for purposes of diversity and removal jurisdiction, corporations can be citizens in two places: the State of incorporation and the State of its principal place of business.

Since the defendant corporation has its principal place of business in Florida, it is deemed a citizen of Florida for jurisdictional purposes if the second part of this statute applies to corporations which have been incorporated in a foreign country.

Only a handful of courts have wrestled with the question of whether section 1332(c) applies to alien corporations and no court of appeals has decided the issue. The district courts are split. A review of those cases presents the arguments on both sides.

In the first reported case to consider the issue, *Eisenberg v. Commercial Union Assurance Co.*, 189 F.Supp. 500 (S.D.N.Y.1960), a New York citizen sued a British corporation. As in the case at bar, the corporation there argued there was no diversity of citizenship because its principal place of business in the United States was in New York. The court first decided that section 1332(c) applies only to domestic corporations, but then held that even if it does apply to alien corporations it would not bar jurisdiction in that case because the corporation's principal place of business was in London.

In reaching its first holding, the court gave controlling weight to its analysis of the statutory language. Basically, the court held that subsection (c) refers to the same corporation throughout and since the first clause dealing with the place of incorporation can apply only to a domestic corporation, the second clause dealing with its principal place of business necessarily applies only to a domestic corporation.

The court refused to adopt the defendant's argued interpretation of section 1332(c) deeming a corporation to be a citizen "of the State where it has its principal place of business" *within the United States.* Such an interpretation the court said was inconsistent with the intent of Congress to retain diversity jurisdiction in the cases where it was legitimately needed to protect against local prejudice.

It is a fair inference that a corporation which has located its principal place of business in a State has adopted that State as its actual residence and will not be subject to prejudice against outsiders. If a British corporation has located its prin-

cipal place of business outside of the United States, however, and has set up two branches in the United States, one in Chicago and one in New York, and the one in New York is merely its principal place of business *in the United States,* no inference can be legitimately drawn from those facts that it has adopted New York as its actual residence. Its contact with New York may be so slight that it is still an outsider there. On the other hand, if a Bahaman corporation, for example, has located its principal place of business in New York, the inference is legitimate that it has adopted New York as its actual residence and that it is no longer entitled to be considered an outsider and to deserve the protection accorded outsiders.

*Id.* at 502.

This *Eisenberg* interpretation has generally been followed in the Southern District of New York. *Tsakonites v. Transpacific Carriers Corp.,* 246 F.Supp. 634 (S.D.N.Y. 1965); *Chemical Transportation Corp. v. Metropolitan Petroleum Corp.,* 246 F.Supp. 563 (S.D.N.Y.1964); *Mazzella v. Pan Oceanica A/S Panama,* 232 F.Supp. 29 (S.D.N.Y. 1964). *See also Hercules, Inc. v. Dynamic Export Corp.,* 71 F.R.D. 101 (S.D.N.Y.1976); *Union Marine & General Insurance Co. v. American Export Lines, Inc.,* 274 F.Supp. 123 (S.D.N.Y.1966); *Willems v. Barclays Bank D.C.O.,* 263 F.Supp. 774 (S.D.N.Y. 1966) (holding section 1332(c) does not give dual citizenship to a domestic corporation with its principal place of business in a foreign country). *But see Jerro v. Home Lines, Inc.,* 377 F.Supp. 670 (S.D.N.Y.1974) (holding section 1332(c) applies to alien corporations).

None of these cases went to the court of appeals. The Second Circuit briefly touched on the issue in dictum in a suit brought by a Canadian trustee in bankruptcy to obtain records in the Canadian bankrupt corporations' New York executive offices. The suit named the New York officers of the corporations as defendants. The court raised the issue of diversity jurisdiction *sua sponte,* noting that under American bankruptcy law the citizenship of the bankrupt rather than the trustee in bankruptcy is determinative for purposes of diversity jurisdiction. The court by footnote stated that as alien corporations organized under the laws of another country, the bankrupt corporations were probably deemed to be citizens exclusively of Canada for diversity purposes, citing cases out of the Southern District of New York and certain treatises. The court disposed of the issue, however, by holding that a trustee, appointed under Canadian law, could use his own citizenship in claiming diversity jurisdiction. *Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 627–28, 628 n.5 (2d Cir. 1976).

The leading contrary case holding section 1332(c) applies to alien corporations is *Southeast Guaranty Trust Co., Ltd. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001 (N.D.Ill.1973). There, certain of the defendants, domestic corporations with their principal places of business in Illinois, argued there was no diversity of citizenship because the plaintiff, a Bahaman corporation, also had its principal place of business in Illinois. The court rejected the technical analysis of *Eisenberg,* saying there was no ground for concluding that because the first half of section 1332(c) does not apply to alien corporations, the second half cannot. The court concluded that applying the statute to alien corporations would better effectuate the legislative purpose underlying section 1332(c):

When a corporation, while incorporated in another state, maintained its principal place of business in the same state in which its legal adversary was a citizen, it was felt neither to need nor deserve the protection of a federal court from any possible state court bias against an outsider. This rationale is no less compelling when applied to a corporation which has been chartered in a foreign country but maintains its principal place of business in the United States.

*Id.* at 1007. This rationale has been followed in the Middle District of Florida, *Richmond Construction Corp. v. Hilb,* 482 F.Supp. 1201 (M.D.Fla.1980), and now in the Southern District of Florida in the instant case.

Although very little has been written in the way of commentary, those who have considered the question have generally concluded on the basis of *Eisenberg* that section 1332(c) probably does not presently apply to an alien corporation but that it should be amended to so apply. *See* 13 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 3628 (1975); 1 Moore's *Federal Practice* ¶¶ 0.75[3]; 0.77[2.- -3] (2d ed. 1980); Currie, *The Federal Courts and the American Law Institute*, 36 U.Chi.L.Rev. 1, 37 (1968); Moore and Weckstein, *Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited*, 77 Harv.L.Rev. 1426, 1435–36 (1964); Note, 72 Harv.L.Rev. 391, 394 (1958); Note, 6 Utah L.Rev. 231, 239 n.56 (1958). The American Law Institute, in its draft revision of the judicial code, recommended the statute be amended to read: "A corporation shall be deemed a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." ALI, *Study of the Division of Jurisdiction Between State and Federal Courts, Official Draft*, § 1301(b)(1) (1969).

In arguing against application of section 1332(c) to alien corporations, plaintiff in this case places particular emphasis on the idea that Congress was referring only to American states and did not intend to include foreign countries in the word "State" in providing citizenship in any "State by which it has been incorporated." This is undoubtedly a correct reading of that part of the statute. Subsection (d) defines "States" to include "the Territories, the District of Columbia, and the Commonwealth of Puerto Rico" with no mention of foreign states.

Reading the word "State" to refer only to an American state, however, does not necessitate the conclusion that the principal place of business part of section 1332(c) cannot be applied to alien corporations. We disagree with the analysis in *Eisenberg* that since the first part of section 1332(c) dealing with the place of incorporation necessarily applies only to a business incorporated in the United States, the second part of section 1332(c) dealing with the principal place of business must also be limited to domestic corporations.

It is clear the statute itself does not provide adequate guidance. Nothing in the statutory formula suggests it was to be limited to domestic corporations. The statute refers merely to "a corporation." It can be and has been interpreted in conflicting ways. It does not appear that Congress specifically considered the question of diversity jurisdiction and alien corporations in 1958. It cannot be inferred from Congress' silence that Congress intended the statute to be construed one way or the other.

■ Congress was endeavoring to define in which states *in the United States* a corporation would be deemed a citizen for purposes of diversity jurisdiction. Congress intended to limit the diversity jurisdiction of the federal courts to those out-of-state citizens who should be free of local bias. Congress decided there was no need for federal court protection of a corporation with its principal place of business in the same state in which its legal adversary is a citizen, even though it is incorporated elsewhere. Applying section 1332(c) to alien corporations effectuates that congressional purpose. The realities of the situation here support this result. Florida is not just Blue Dot's principal place of business, it is its only place of business. There is no reason to treat it differently from, for example, a Delaware corporation which has its principal place of business in Florida. We therefore hold that a foreign corporation is a citizen for diversity jurisdiction purposes of a state where it has its principal place of business.

■ Plaintiffs suggest a remand to the district court for an evidentiary hearing as to why Blue Dot was incorporated in Panama. Plaintiffs did not ask for such a hearing in the district court. Issues raised for the first time on appeal are generally not considered by this Court. *In the Matter of Novack*, 639 F.2d 1274 (5th Cir. 1981). In any event, the reasons for Blue Dot's incorporation in Panama are irrelevant. It is

undisputed that Blue Dot is an alien corporation with its principal place of business in Florida. That is sufficient for this Court's decision.

AFFIRMED.