**CHICK KAM CHOO, et al., Plaintiffs-Appellants,**

v.

**EXXON CORPORATION, et al., Defendants-Appellees.**

No. 84–2351.

United States Court of Appeals, Fifth Circuit.

July 8, 1985.

---

Benton Musslewhite, Houston, Tex., for plaintiffs-appellants.

James Patrick Cooney, Houston, Tex., for defendants-appellees.

Before JOHNSON, JOLLY and HILL, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

■ This appeal presents the question whether diversity jurisdiction may be invoked in a suit between individual alien plaintiffs and an alien corporation with its principal place of business in a state different from that of the forum state. The district court assumed jurisdiction of the case under the diversity of citizenship provision of 28 U.S.C. § 1332(a)(2). Because the district court was without jurisdiction, we vacate the court's judgment. Diversity jurisdiction may not be invoked pursuant to section 1332(a)(2) in a suit between individual aliens and an alien corporation.

I

The plaintiffs, all citizens of Singapore, are the survivors of a shipyard worker, Leong Choy, who was killed in March 1977 while working aboard the M/S ESSO WILHELMSHAVEN in Singapore. The vessel is owned by Esso Tankers, Inc. (Esso), a Liberian corporation with its principal place of business in New Jersey, and was operated by Exxon International Company, an unincorporated division of Exxon Corporation (Exxon), which is incorporated in Delaware. There is a factual dispute, not necessary for us to consider, as to whether Exxon's principal place of business is in Texas or New York.

This case is not the first in which these parties have had their claims before the federal courts. Seeking damages for the unfortunate death of Choy, the plaintiffs first filed suit against Exxon and Esso in the United States District Court for the Southern District of Texas in 1978. They asserted causes of action under the Jones Act, the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), the Death on the High Seas Act (DOHSA), general maritime law, and the Texas wrongful death statute. The district court dismissed the plaintiffs' federal claims with prejudice, holding that no cause of action

was stated under federal law. The remainder of the plaintiffs' claims were dismissed under the doctrine of *forum non conveniens*. The district court reasoned that since the law of Singapore would control, and since Singapore was the site of the accident, the courts of Singapore would be a more appropriate forum. Thus the plaintiffs' federal claims were dismissed with prejudice and the remaining claims were left to be resolved by a Singapore court. No appeal was taken from this action, but several months later, the plaintiffs sought reconsideration by the district court under Fed.R.Civ.P. 60(b). Reconsideration was denied and this court affirmed that denial on appeal. *Chick Kam Choo v. Exxon Corp.*, 699 F.2d 693 (5th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 98, 78 L.Ed.2d 103 (1983).

Not satisfied with the disposition of their suit, the plaintiffs on January 6, 1984, filed a second suit, this time in Texas state court. The plaintiffs set forth the same causes of action in state court that were presented in the initial federal action. Exxon and Esso removed the case to federal district court on the basis of diversity of citizenship. They then filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), contending that the second action was virtually identical to the case previously dismissed by the district court, and therefore was barred by the doctrine of *res judicata*. Exxon and Esso additionally sought sanctions against the plaintiffs' attorney pursuant to Fed.R.Civ.P. 11. The plaintiffs moved to remand to state court, arguing that the district court had no jurisdiction, because complete diversity of citizenship was lacking between the parties. The district court denied the motion to remand but granted the defendants' motion to dismiss, holding that the first action was *res judicata*. The district court also imposed sanctions against the plaintiffs' attorney personally in the amount of $4,880.92. The plaintiffs now appeal.

## II

Although several issues have been presented for our resolution, we find it necessary to consider only one threshold issue: whether the district court had subject matter jurisdiction by virtue of diversity of citizenship to consider the merits of the case.

## III

While diversity jurisdiction remains an integral part of federal jurisdiction and must be exercised where the principles of the Constitution, statutes, and case law so command, policy reasons counsel against extending diversity jurisdiction into all possible areas. There are good reasons for this cautious attitude. Deciding cases under state law without resort to review by state courts creates the possibility of interference with state autonomy. The resolution of issues under state law adds a substantial burden to the courts, sometimes greater than that involved in resolving issues of federal law, in that the federal courts often must labor without the aid of guiding precedent, requiring that they place themselves in the position of state courts to project or anticipate a proper state court decision. As the American Law Institute has stated, "[P]ushing the constitutional grant of diversity jurisdiction to the maximum would be destructive of the dignity and prestige of state courts, harmful to the federal courts and disruptive of federal-state relationships." American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* 99–103 (1969).

With this viewpoint in mind we now turn to consider the language of 28 U.S.C. § 1332 at issue in this appeal. Section 1332 provides in relevant part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000 ... and is between—

(1) citizens of different States;

(2) citizens of a State, and citizens or subjects of a foreign state; and

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties ....

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business ....

Before we begin our examination of the cases, let us set forth briefly the respective interpretations given by the parties to section 1332. The plaintiffs argue that even though Esso is a citizen of New Jersey, it is at the same time a Liberian citizen, and therefore jurisdiction is destroyed because an action cannot be maintained between an alien and another alien under section 1332. Esso's basic position is that jurisdiction was properly invoked because there is diversity of citizenship between the plaintiffs and Esso by virtue of Esso's New Jersey citizenship.

One important case in this circuit construing section 1332 is *Ed & Fred, Inc. v. Puritan Marine Insurance Underwriters Corp.*, 506 F.2d 757 (5th Cir.1975). There, the plaintiff, Ed & Fred, was a corporation of the Netherlands Antilles with its sole place of business there. One defendant was incorporated in, and operated its business from Bermuda. The other defendant was incorporated in Massachusetts and had its principal place of business there. *Id.* at 757–58. The question before the court was whether complete diversity is required in suits between aliens and whether such diversity existed in that case. The court held that the rule of complete diversity first set

forth in *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), applied to suits between aliens. Thus, since complete diversity was not present in that case, jurisdiction could not be based upon section 1332. The court specifically noted that section 1332(a)(3) was inapplicable because it applied only in suits between citizens of different states with aliens as additional parties. *Id.* at 758. Although the analysis in *Ed & Fred* was dictum since the case properly fell within federal admiralty jurisdiction, we nevertheless find it to be a correct statement of the law. For the purposes of section 1332(a)(2) complete diversity is required. Thus the existence of Exxon as a party defendant does not confer upon the district court diversity jurisdiction. *Id.; accord Field v. Volkswagenwerk AG*, 626 F.2d 293, 296 (3d Cir.1980).[1]

The most recent major development in diversity jurisdiction, for our purposes, arose in *Jerguson v. Blue Dot Investment, Inc.*, 659 F.2d 31 (5th Cir.1981). In *Jerguson* we examined section 1332(c), which provides that a corporation shall be deemed a citizen of any state in which it is incorporated, and of the state in which it has its principal place of business. The question for the court's resolution was whether diversity jurisdiction could be invoked in a suit brought by a citizen of Florida against a Panamanian corporation with its principal place of business in Florida. *Id.* at 32. We noted that section 1332(c), on its face, does not explicitly apply to foreign corporations, or limit its application to domestic corporations. We also found the legislative history to be silent regarding the effects of

---

1. In *Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 420 n. 6 (5th Cir.1982), this court stated that section 1332(a)(3) may have the effect of retaining federal jurisdiction when there is complete diversity between the United States citizens involved in an action but there are foreign subjects among the parties on both sides. It has been suggested that this statement modifies the dicta in *Ed & Fred* that aliens may not be on both sides of a controversy to invoke diversity jurisdiction. *See K & H Business Consultants, Ltd. v. Cheltonian, Ltd.*, 567 F.Supp. 420, 423–24 (D.N.J.1983). To the contrary, the holding in *Goar* does not affect the general proposition set forth in *Ed & Fred* that aliens may not be on both sides of a dispute for the purposes of diversity. Our opinion in *Ed & Fred* purported to apply only section 1332(a)(2). Section 1332(a)(3) was held to be inapplicable in that case because the suit was not between citizens of different states with aliens as additional parties. *See Ed & Fred*, 506 F.2d at 758. Similarly, section 1332(a)(3) is inapplicable in this case because United States citizens are not on both sides of the controversy.

section 1332(c) on alien corporations. *Id.* [2] After examining the statutory language and considering the historical treatment of corporations for diversity purposes, however, we held that there was no diversity of citizenship. *Id.* at 35. The alien corporation was deemed to have been a citizen of Florida by virtue of having its principal place of business in Florida. Since the plaintiff was a citizen of Florida, both parties were citizens of the forum state, thereby eliminating diversity jurisdiction. We found no reason to distinguish between alien corporations and domestic corporations under those circumstances. *Id.*

Although *Jerguson* involved facts similar to those here, it does not resolve the precise question facing us. *Jerguson* simply stands for the proposition that an alien corporation with its principal place of business in a particular state is not subject to suit in federal court by a citizen of the same state. The question here is whether a suit may be maintained in federal court between an individual alien and an alien corporation having its principal place of business in a state of the United States.

■■■ We answer this question in the negative. First, we find no persuasive reason to treat an alien corporation differently from a domestic corporation for the purposes of applying section 1332(c). As expressed by Judge Wisdom a few years ago, the effect of section 1332(c) on domestic corporations is without question:

> The Act does not give an option to a plaintiff of treating a corporation as a citizen either of the state of incorporation or of the state where its principal place of business is located. The Act treats a corporation as a citizen of the state where it has its principal place of business as well as the state of incorpo-

ration. This is clearly indicated by the use of the conjunctive "and". The purpose of the law was to narrow jurisdiction, not to broaden it.

*Canton v. Angelina Casualty Co.,* 279 F.2d 553, 554 (5th Cir.1960) (footnote omitted); *see generally* Wright, *Law of Federal Courts,* § 27 at 103 (3d Ed.1976). The above principles applicable to domestic corporations are equally applicable to alien corporations. Esso Tankers, then, even though a citizen of New Jersey, is to be regarded as a citizen of Liberia as well. Because Esso is a citizen of Liberia, and because the plaintiffs are citizens of Singapore, diversity jurisdiction may not therefore be invoked under section 1332(a)(2). *See Ed & Fred,* 506 F.2d at 758; *Hawaiian Agronomics Co. v. Government of Iran,* 518 F.Supp. 596, 596–97 (C.D.Cal.1981); *Salomon Englander Y CIA, LTDA v. Israel Discount Bank, Ltd.,* 494 F.Supp. 914, 916–17 (S.D.N.Y.1980).

Our decision is also grounded in the clearly established congressional policy underlying diversity jurisdiction. Subsection (c) of section 1332 was adopted in 1958 by Congress as part of legislation designed to reduce the caseload of the federal courts, and to correct abuses of diversity jurisdiction. *Jerguson,* 659 F.2d at 32.[3] Before the 1958 amendment, a corporation engaged in a local business and often locally owned was able to file suit in federal court simply because it had obtained a corporate charter from another state. This circumstance was considered unfair because it enabled some corporations to choose between state or federal court, although local corporations incorporated in the home state did not have such an advantage. To correct this problem, Congress provided that

**2.** Congress apparently did not consider the effect of section 1332(c) on alien corporations when it amended the diversity statute in 1958, and it cannot be inferred from Congress's silence that Congress intended the statute to be construed in one way or the other. *See Jerguson,* 659 F.2d at 35.

**3.** The original central justification for diversity jurisdiction was grounded in the fear of preju-

dice against outsiders from other states, or in other words, the lack of confidence in the adequacy of state court justice. If general diversity jurisdiction is to be retained it should only be because this basic reason continues to have validity. *See* American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* 101, 105 (1969).

for purposes of diversity jurisdiction corporations are considered to be citizens of two places—the state of incorporation and the state of its principal place of business. *Id.* at 33.

■ As we noted in *Jerguson,* it is clear that Congress intended to limit the diversity jurisdiction of federal courts to those out-of-state citizens who may be subject to local bias. *Id.* at 35. Congress determined there was no need for federal court protection of a corporation with its principal place of business in the same state in which its legal adversary is a citizen, even though it is incorporated elsewhere. *Id.* Similarly, we find no need for federal court protection for Esso tankers. Again, we cannot overemphasize the primary underlying purpose of the diversity statute, that is, to provide a separate forum for out-of-state citizens to protect those citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the federal courts. *Id.* at 33 (citing S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad.News 3099, 3101–02). When, as in this case, an alien plaintiff sues in state court another alien (who has a principal place of business in the United States), the danger is remote that the alien plaintiff will benefit from local bias of state courts or juries. Thus, the underlying purpose of diversity jurisdiction simply would not be furthered by its extension under the facts of this case.

In conclusion, we hold that diversity jurisdiction under 28 U.S.C. § 1332(a)(2) may not be invoked in a suit between an alien and an alien corporation with its principal place business in a state of the United States. Because the district court in this case erred in failing to remand the case to state court, we vacate the court's judgment with instructions that the case be remanded to the state court.

VACATED and REMANDED.[4]

4. Because the district court was without jurisdiction, its imposition of sanctions against the plaintiffs' attorney pursuant to Fed.R.Civ.P. 11 is vacated.