**Nezameddin ROUHI, Liquidator, F. & H.R. Farman—Farmain, Plaintiff,**

v.

**HARZA ENGINEERING COMPANY, Harza Engineering Company International, Richard D. Harza, John H. Scoville, and George E. Pabich, Defendants.**

No. 91 C 3187.

United States District Court, N.D. Illinois, E.D.

Feb. 10, 1992.

Michael Joseph Daley, Donald Cahill Shine, Nisen & Elliott, Chicago, Ill., for plaintiff.

Gary L. Prior, McDermott, Will & Emery, P.C., Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff, Nezameddin Rouhi (Rouhi), as liquidator of F. & H.R. Farman–Farmaian (Farman–Farmaian), brings this action against defendants for money allegedly due Farman–Farmaian as its share of an award issued to certain of the defendants by the Iran–United States Claim Tribunal.

Defendants now move this court to require plaintiff to post a security bond, pursuant to Civil Rule 2 of the Northern District of Illinois.[1] Defendants also move to dismiss plaintiff's complaint for lack of subject matter jurisdiction, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, and request that we assess attorneys' fees against plaintiff under Rule 11. For the following reasons, we grant defendants' motion to dismiss, decline to impose Rule 11 sanctions, and deny defendants' motion for a security bond.

## DISCUSSION

### I. *Jurisdictional Issue*

Plaintiff alleges federal jurisdiction based solely on diversity of citizenship under 28 U.S.C. § 1332(a)(2).[2] According to the complaint, Rouhi is an Iranian citizen who resides in Tehran, Iran, and Farman–Farmaian is an Iranian entity with its principal place of business in Tehran. Defendant Harza Engineering Company (Harza) is a Delaware corporation with its principal place of business in Chicago. Defendants Richard Harza, John Scoville and George Pabich are citizens and residents of Illinois. Finally, defendant Harza Engineering Company International (Harza International) is a Liberian corporation with its principal place of business in Chicago.[3]

Defendants claim that complete diversity is lacking because plaintiff is Iranian[4] and a defendant, Harza International, is a Liberian corporation. Complete diversity, as required by *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806), is

defeated by the presence of alien parties on both sides of a suit under § 1332(a)(2).[5] *Bank of Nova Scotia v. S & W Berisford, Inc.*, 753 F.Supp. 237, 238 (N.D.Ill.1990). The primary issue in this case is whether an alien corporation with its principal place of business in the United States can be considered a citizen of a state of the United States for diversity purposes; and, if so, whether the alien place of incorporation still serves to defeat diversity jurisdiction in a suit brought by another alien.

### A. Application of § 1332(c) to Alien Corporations

The first question is whether 28 U.S.C. § 1332(c) applies to alien corporations, or only to domestic corporations. Section 1332(c)(1) provides:

> For the purposes of this section and section 1441 of this title ... a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business....

If § 1332(c) applies only to domestic corporations, then the principal place of business of Harza International is irrelevant for jurisdictional purposes. Alien corporations are generally considered citizens of their country of incorporation. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1242 n. 2 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991); *R.W. Sawant & Co. v. Ben Kozloff, Inc.*, 507 F.Supp. 614, 616 (N.D.Ill.1981). In this case, without considering the principal place of business, both plaintiff and one

---

**1.** In our memorandum and order of July 24, 1991, this court deferred ruling on defendants' motion to post security.

**2.** § 1332(a)(2) states:
The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between ... citizens of a State and citizens or subjects of a foreign state.

**3.** For purposes of this motion to dismiss, we accept plaintiff's allegations as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Using this standard, this opinion assumes the jurisdictional

facts as indicated by plaintiff in the complaint. We note that defendants dispute plaintiff's assertion that Harza International's principal place of business is in Illinois.

**4.** Because Rouhi is a citizen of Iran and Farman–Farmaian is an Iranian entity, we need not address whether Rouhi's or Farman–Farmaian's citizenship is the relevant one for jurisdictional purposes.

**5.** The complete diversity requirement is based on the diversity statute and not on Article III of the Constitution. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 829 n. 1, 109 S.Ct. 2218, 2221 n. 1, 104 L.Ed.2d 893 (1989).

defendant (Harza International) would be considered aliens. Diversity then would be defeated because the case would be viewed as one with aliens on both sides of the dispute.

■ *Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001, 1007 (N.D.Ill.1973), rejected the reasoning of *Eisenberg v. Commercial Union Assurance Co.,* 189 F.Supp. 500 (S.D.N.Y. 1960),[6] and held that § 1332(c) did apply to foreign corporations. The court found that applying § 1332(c) to alien corporations better served congressional intent to limit the diversity jurisdiction of federal courts. *Southeast,* 358 F.Supp. at 1007. The court reasoned that, like a domestic corporation, an alien corporation with its principal place of business in a state of the United States neither needs nor deserves the protection of a federal court from state-court bias. *Id.* at 1007. In *Southeast,* the plaintiff was a Bahamian corporation with its principal place of business in Illinois. Because some defendants were citizens of Illinois, plaintiff's § 1332(c) Illinois citizenship destroyed complete diversity. The Seventh Circuit apparently has not addressed the issue, but the reasoning of *Southeast* and other cases persuades us that § 1332(c) applies to a foreign corporation with its principal place of business within the United States.[7] *See Southeast,* 358 F.Supp. at 1005–07; *Beeler, Schad & Diamond, P.C., v. American Trust Ins. Co.,* No. 91 C 288, 1991 WL 331607, 1991 U.S. Dist. LEXIS 5852, at *1–2 (N.D.Ill.1991) ("But most (though not all) of the case law these days treats an alien corporation's principal place of business as also relevant under 28 U.S.C. § 1332(c)(1)"). Therefore, under

§ 1332(c) Harza International's principal place of business in Illinois makes it a citizen of Illinois for purposes of diversity.

**B. Whether § 1332(c) Produces Dual or Single Citizenship**

■ Defendants argue that even if we find § 1332(c) applicable to alien corporations, the resulting citizenship of Harza International will be "dual"; that is, Harza International will be a citizen of *both* its state of incorporation (Liberia) and the state where it has its principal place of business (Illinois). Under § 1332(c), a domestic corporation is deemed a citizen both of its state of incorporation and the state where it has its principal place of business. A domestic corporation, then, cannot be diverse to a party whose citizenship is the same as either of the domestic corporation's citizenships. According to defendants, Harza International should be treated just as a domestic corporation would be treated—Harza International would not be diverse to a citizen of either of its places of citizenship. Harza International, as an alien *and* a citizen of Illinois, would not be diverse to plaintiff, an alien. The alternative view, and one that would save diversity jurisdiction here, is to consider an alien corporation with its principal place of business in a state of the United States to be a citizen *solely* of that state. Case law goes both ways.

Several Northern District of Illinois courts have encountered this issue; none has resolved it conclusively. In *R.W. Sawant & Co. v. Ben Kozloff, Inc.,* 507 F.Supp. 614 (N.D.Ill.1981), Judge Flaum noted the debate about whether § 1332(c) applies to alien corporations and decided

---

**6.** *Eisenberg* was the first court to consider the applicability of § 1332(c) to foreign corporations. The court reasoned that Congress' use of a capital "S" in the word "State" in § 1332(a) to differentiate between states of the United States and foreign states, limited the application of § 1332(c) (which uses only the capitalized "State") to domestic corporations. The *Southeast* court countered that even if "State by which it has been incorporated" was limited to domestic corporations, the second half of § 1332(c) could still apply to foreign corporations. "Obviously Congress would only use the word State with a capital S, since if a corporation's princi-

pal place of business was in a foreign state it would have no effect whatsoever on its citizenship for diversity purposes in the courts of the United States." *Southeast,* 358 F.Supp. at 1006–07.

**7.** We need not reach the issue of whether this application of § 1332(c) contemplates an alien corporation's principal place of business within the U.S., or only an alien corporation's worldwide principal place of business, when that worldwide principal place of business is in the U.S. *See Sawant,* 507 F.Supp. at 616.

that "[i]f section 1332(c) applies to alien corporations, the better approach is to consider a foreign corporation a citizen of the foreign state in which it is incorporated and the state or foreign state where it has its principal place of business." *Sawant*, 507 F.Supp. at 616. Though this language supports the dual citizenship theory, the court did not address the ramifications of dual versus single citizenship because the alien corporation's principal place of business was found to be outside the United States.

In one unpublished district court opinion, on facts very similar to this case, the judge found diversity existed, but with no discussion of the applicability of § 1332(c) to alien corporations or of the effect of dual citizenship under § 1332(a)(2).[8] Though the judge denied defendants' motion to dismiss for lack of subject matter jurisdiction, she granted its motion to dismiss for lack of personal jurisdiction, thus diminishing the importance of her subject matter jurisdiction resolution.

While the Seventh Circuit has not addressed the dual citizenship issue, other circuits have. The law in the Second Circuit is clear that "a corporation organized under the laws of a foreign nation remains an *alien* corporation under § 1332, even if its principal place of business is in one of the States." *International Shipping Co., S.A., v. Hydra Offshore, Inc.*, 875 F.2d 388, 392 (2d Cir.1989), *cert. denied, Golub v.*

*Hydra Offshore, Inc.*, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (emphasis in original); *Interpool, Ltd., v. Orient Overseas Container Line, Ltd.*, No. 91 C 135, slip op., 1991 WL 107272 (S.D.N.Y. June 13, 1991) (law in Second Circuit is clear that dual citizenship attaches if § 1332(c) applies, and such duality operates the same as with domestic corporations). The *International Shipping* court also affirmed Rule 11 sanctions against plaintiff's counsel for failure to examine adequately the basis of federal jurisdiction.

In *Panalpina Welttransport GmBh v. Geosource, Inc.*, 764 F.2d 352 (5th Cir. 1985), the Fifth Circuit endorsed the view that a foreign corporation should be treated the same as a domestic corporation for diversity purposes. "Like a domestic corporation, an alien corporation may *add* an additional place of citizenship for diversity purposes if its principal place of business is within one of the states of the United States," but it does not lose its foreign citizenship. *Id.* at 354 (emphasis added). The *Panalpina* court was concerned with preventing a corporation from picking and choosing among places of citizenship in order to preserve diversity jurisdiction.

■ Consistent with the Second and Fifth Circuits, and in the absence of controlling case law, we find no compelling reason to treat an alien corporation differently from a domestic one under § 1332(c).[9]

---

**8.** *Amiran v. Ranger International, Inc.*, No. 87 C 10994, 1989 WL 88232, at \*1, 1989 U.S. Dist. LEXIS 8984, at \*2 (N.D.Ill.1989) ("Although Ranger International is incorporated in Panama, in its answers to interrogatories asking for office addresses and telephone numbers of Ranger and various of its agents from 1983 to September, 1988, Ranger listed only two Houston addresses and one Houston phone number. Under 28 U.S.C. § 1332(c), Ranger is therefore a citizen of Texas, having its principal place of business in Houston, and this court has diversity jurisdiction under § 1332(a)(2).").

**9.** For a persuasive argument that § 1332(c) should operate differently for an alien corporation with its principal place of business in the U.S. than for a domestic corporation, *see Trans World Hospital Supplies, Ltd., v. Hospital Corp. of America*, 542 F.Supp. 869 (M.D.Tenn.1982) (applying § 1332(c) to alien corporations but rejecting literal "dual" citizenship). *See, also,*

Note, *Alien Corporations and Federal Diversity Jurisdiction*, 84 Colum.L.Rev. 177 (1984). Applying § 1332(c) to alien corporations and finding a single U.S. citizenship will in many cases serve to limit diversity jurisdiction where it would have otherwise existed, such as where an opposing party is a citizen of the state of the alien corporation's principal place of business. While applying § 1332(c) and finding dual citizenship is unquestionably the more limiting option, it arguably does not reflect as well the possible special policy concerns of alienage jurisdiction. *See* 84 Colum.L.Rev. at 190–91. Further, defendants' and the *Panalpina* court's concern about parties picking and choosing citizenships for diversity purposes would not be an issue if § 1332(c) applied and gave the alien corporation a single U.S. citizenship. *See Panalpina*, 764 F.2d at 354. In any event, we are not convinced by these arguments, and we leave them for an appellate court, or perhaps Congress, to consider.

Harza International, as an alien corporation with its principal place of business in a state of the United States, cannot be diverse to an alien party or a party from the state of the corporation's principal place of business. This result "is in keeping with Congress' intendment to constrict the availability of diversity jurisdiction." *Panalpina*, 764 F.2d at 354. Thus, complete diversity is lacking and this case must be dismissed for lack of subject matter jurisdiction.

### C. Alter Ego Theory

■ Plaintiff spends virtually its entire argument attempting to demonstrate that Harza International is the alter ego of Harza,[10] and that therefore only the citizenship of Harza (Illinois) should be considered for diversity purposes. We note that plaintiff's complaint is devoid of any allegation that Harza International is the alter ego of Harza or that diversity is based on that theory.[11] However, even if we assume this allegation was properly made, plaintiff's theory still fails to save this court's jurisdiction.

The cases plaintiff cites concerning piercing the corporate veil have little, if anything, to do with diversity jurisdiction.[12] In fact, the only case cited that concerns the alter ego theory and diversity jurisdiction is in itself sufficient to doom plaintiff's theory. In *Panalpina, supra,* the court held:

As we perceive the requirements of 28 U.S.C. § 1332, with its jurisprudential glosses, the alter ego doctrine may be used to add places of citizenship to the abrogation of diversity jurisdiction but may not be used to extend such jurisdiction.

*Id.* at 354–55. The alter ego theory is used by federal courts to *limit* diversity jurisdiction, consistent with the intent of Congress. *See Beightol v. Capitol Bankers Life Ins. Co.*, 730 F.Supp. 190, 193 n. 2 (E.D.Wis. 1990); *see also Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 557–59 (5th Cir.1985). As such, the alter ego theory is no help to plaintiff.[13] As discussed above, the Liberian incorporation of Harza International still destroys complete diversity.

Plaintiff also cites *Panalpina* for the proposition that federal courts may disregard "the form of foreign incorporation in diversity cases when the foreign incorporation is used to perpetrate some improper practice" (Response at 4). The "improper practice" of Harza that plaintiff would like this court to consider is just the basis of plaintiff's claim against Harza, *i.e.*, that Harza withheld money due Farman–Farmaian. An accurate characterization of *Panalpina* would reveal the court's "caveat that jurisdictional rules may not be used to perpetrate a fraud or ill-practice upon the court by either improperly creating or de-

**10.** In its response to defendants' motion to dismiss, plaintiff claims, among other things, that Harza and Harza International have common ownership, employees and officers.

**11.** Plaintiff's complaint does state that Harza and Harza International are "affiliated companies," but goes no further to allege that this fact is relevant to determining whether diversity of citizenship exists.

**12.** One of the few cases plaintiff cites to support its alter ego theory is *Baker v. Caravan Moving Corp.*, 561 F.Supp. 337 (N.D.Ill.1983). *Baker* has nothing to do with piercing the corporate veil for jurisdictional purposes. Rather, it addresses piercing the corporate veil when fraud or a wrong is committed by the parent through a subsidiary that is a mere instrumentality of the parent. Moreover, the fraud or wrong contemplated by the court are acts such as "torts, violation of a statute or stripping the subsidiary of its assets; and unjust loss or injury to the claimant,

such as insolvency of the subsidiary." *Baker*, 561 F.Supp. at 340, *quoting Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 160 (7th Cir.1963).

**13.** We therefore agree with defendant that we need not reach the merits of plaintiff's alter ego argument (Dfts' reply at 6). Even assuming the merits of plaintiff's alter ego claim were relevant to this jurisdictional issue, we wonder whether plaintiff is attempting to have its cake and eat it too. If Harza International is in fact the alter ego of Harza, as plaintiff claims, then any judgment for plaintiff against Harza (assuming Harza International is not named as a party and diversity therefore exists) would likely be enforceable against Harza International based on the alter ego theory. Thus, if its alter ego theory is correct, we would expect plaintiff to be indifferent to the presence of Harza International at this point. Because plaintiff is not so indifferent, our resolution of plaintiff's alter ego claim is especially appropriate.

stroying diversity jurisdiction." *Panalpina,* 764 F.2d at 355. The improper purpose must relate to defendants' attempts to *improperly* destroy diversity jurisdiction. As in *Panalpina,* there is no allegation that Harza International was incorporated in Liberia "solely for purposes of destroying diversity jurisdiction in a suit by an alien." *Panalpina,* 764 F.2d at 355.

## II. *Rule 11*

Defendants request that this court impose Rule 11 sanctions on the grounds that plaintiff failed to make a reasonable inquiry into the basis for diversity jurisdiction, and that a "cursory review of a hornbook or digest" would have revealed the lack of diversity. *International Shipping,* 875 F.2d at 391. A district judge *shall* impose sanctions where appropriate. *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1082 (7th Cir.1987), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). In deciding whether to impose Rule 11 sanctions, we must make an objective determination of whether plaintiff's conduct was reasonable in this case. *Brown v. Federation of State Medical Boards,* 830 F.2d 1429, 1435 (7th Cir.1987).

If, as defendants claim, plaintiff's attorney failed to make a reasonable inquiry into the law, then sanctions are appropriate. *Id.* at 1435. In making this determination, we can consider "whether the document contained a plausible view of the law." *Id.* at 1435. In this case we must consider whether plaintiff's complaint contained allegations to support a plausible view of the law regarding § 1332.

Though we have found that plaintiff has failed to allege complete diversity, we do not believe Rule 11 sanctions are warranted. While it is true that the Second Circuit has affirmed the imposition of Rule 11 sanctions in a case substantially similar to this one, luckily for plaintiff we are not in the Second Circuit. *See International Shipping, supra.* One need only read the strong dissent in *International Shipping,*[14] and review the case law outside of the Second Circuit, to conclude that there is a *plausible* reading of § 1332 that would justify a finding of diversity here.[15] Therefore, we decline to award attorneys' fees under Rule 11.

## III. *Security Bond*

Defendants also move this court to order plaintiff to post a security bond of $25,000 for costs and $25,000 for attorneys' fees. Because we decline to impose Rule 11 sanctions against plaintiff, we deny the motion for security bond relating to attorneys' fees. Having dismissed this case for lack of subject matter jurisdiction, we deny as moot the motion for security bond for costs.

## CONCLUSION

We grant defendants' motion to dismiss for lack of subject matter jurisdiction. We deny defendants' motion for a security bond.

---

**14.** "Notwithstanding the respectable authority supporting [plaintiff's counsel's] interpretation of the statute, the majority relies on an exaggerated reading of our *Venezolana* [*de Fomento v. Vintero Sales Corp.,* 629 F.2d 786 (2d Cir.1980)]

decision to justify the sanction. *International Shipping,* 875 F.2d at 394.

**15.** *See* fn. 8, *supra; see, also, Amiran, supra,* n. 7 (finding diversity on substantially similar facts).