**PANCAN INTERNATIONAL MANAGEMENT CONSULTANTS, INC., Plaintiff,**

v.

**STS MICROSCAN, INC., Defendant.**

**No. 93–CV–72633–DT.**

United States District Court,
E.D. Michigan, S.D.

Nov. 18, 1993.

---

**38.** *See* discussion, *supra*, Part IV. B.1.

**39.** *See* discussion, *supra*, Part IV. B.2.

William S. Morrison, Troy, MI, for plaintiff.

Larry J. Saylor, Frederick A. Acomb, Detroit, MI, for defendant.

## ORDER

JULIAN ABELE COOK, Jr., District Judge.

On August 16, 1993, the Defendant, STS MicroScan, Inc. (MicroScan), filed a Motion to Dismiss, contending that the Plaintiff, Pancan International Management Consultants, Inc. (Pancan), had "failed to plead any fact demonstrating that this Court possesses subject matter jurisdiction." (Motion to Dismiss at ¶ 1.) On September 16, 1993, Pancan filed an untimely pleading in opposition to MicroScan's motion, as well as its own Motion for Leave to Amend Complaint. Oral arguments were presented to the Court on September 28, 1993. Thereafter, the parties' motions were taken under advisement.

For the reasons that have been set forth below, MicroScan's Motion to Dismiss shall be granted, and Pancan's Motion for Leave to Amend the Complaint shall be denied.

## I

Pancan initiated this lawsuit against MicroScan on the basis of an alleged breach of contract. During the first half of 1990, Pancan agreed to solicit business from the Canadian government on behalf of, and as an agent for, STS Information Services, Inc. (STS) pursuant to a "written commission plan." (Complaint at ¶¶ 6, 7.) On April 30, 1991, these two parties formed a Sales Representative Agreement (Agreement) in which STS allegedly "agreed to pay to Pancan 1½% of all revenues received" from a Canadian Post Office project, commonly known as the CPO Project. *Id.* at ¶ 9. Approximately fourteen months later, MicroScan "purchased substantially all of the assets of STS [and] took an assignment of the Agreement." *Id.* at ¶ 10. Pancan, believing that (1) all of its contractual obligations had been satisfied and (2) MicroScan had been fully paid by the Canadian government for the work that it performed in connection with the CPO project, made a demand for payment of its fees

in December, 1992. *Id.* at ¶¶ 11, 12. When its demand was rejected by MicroScan, Pancan initiated this lawsuit.

## II

In its Motion to Dismiss, MicroScan challenges Pancan's alleged failure to specifically plead any fact demonstrating that this Court possesses subject matter jurisdiction. (MicroScan's Brief at 1.) Although Pancan did not allege a basis for jurisdiction in its Complaint, this Court will examine the entire record—not merely the Complaint—in order to make its assessment of the MicroScan motion. *See, e.g., Topp v. CompAir, Inc.,* 814 F.2d 830 (1st Cir.1987) (court may receive live testimony concerning facts relating to citizenship of parties); *Blakemore v. Missouri P.R. Co.,* 789 F.2d 616 (8th Cir.1986); *Prakash v. American University,* 727 F.2d 1174 (D.C.Cir.1984) (court has wide discretion in determining evidence to use when evaluating jurisdiction); *Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698 (1st Cir.1979) (court may examine interrogatories, depositions, and affidavits to determine jurisdictional question). In its opposition papers, MicroScan insists that this Court cannot exercise jurisdiction over this dispute. (MicroScan's Brief at 2–3.)

## III

Federal district courts have original jurisdiction in those civil proceedings in which (1) the action relates to a federal question, or (2) there is a diversity of citizenship between the parties and the amount in controversy exceeds the value of $50,000, exclusive of interest and costs. 28 U.S.C. §§ 1331, 1332. Federal jurisdiction is proper only when an action "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, the conflict between the parties is based upon a contract dispute. Hence, this Court cannot exercise jurisdiction over the subject matter on the basis of a federal question.

This leaves the issue of whether there is the requisite diversity of citizenship between the parties to be resolved by this Court. In the absence of federal question jurisdiction,

the parties to a dispute must fall within one of the following categories in order for this Court to acquire jurisdiction:

(1) citizens of different States;[1]

(2) citizens of a State and citizens or subjects of a foreign state; [or]

(3) citizens of different States and [where] citizens or subjects of a foreign state are additional parties....

28 U.S.C. § 1332(a).[2] When the parties are domestic corporations, their citizenship is determined by the state (1) in which each corporate entity is formed, and (2) where the principal place of business is maintained. 28 U.S.C. § 1332(c). It is undisputed that both parties in this dispute were incorporated in Canada.

### A

■ Section 1332(c) has been widely interpreted to be applicable to foreign corporations. *Trans World Hospital Supplies, Ltd. v. Hospital Corp. of America,* 542 F.Supp. 869 (M.D.Tenn.1982); *Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001 (N.D.Ill.1973); *Jerguson v. Blue Dot Invest. Inc.,* 659 F.2d 31 (5th Cir. 1981), *cert. denied* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); *Schneider v. Bahama Cruise Line, Inc.,* 664 F.Supp. 80 (S.D.N.Y.1987); *Rouhi v. Harza Engineering Co.,* 785 F.Supp. 1290 (N.D.Ill.1992).

The *Trans World* court explicitly held that jurisdictional issues relating to foreign corporations with a principal place of business in the United States are governed by § 1332(c). In *Trans World,* a British corporation brought an action against a Cayman Islands corporation which maintained its principal

place of business in Tennessee. The court retained jurisdiction over the parties by invoking § 1332(c) when it recognized the Tennessee citizenship of the defendant:

> While ... the recognition [by other courts] of such state citizenship for an alien corporation has generally resulted in the absence of complete diversity, ... the creation of diversity jurisdiction in [a case such as this] is not inconsistent with the fundamental purpose of section 1332(c) to bar purely local controversies from federal courts.

*Trans World,* 542 F.Supp. at 878. The *Trans World* court based its holding on *Southeast Guaranty* and its progeny. In *Southeast Guaranty,* the court held that there was an insufficient basis upon which to establish complete diversity where one party was a citizen of Illinois, and the other party was a Bahamian corporation with its principal place of business in Illinois. 358 F.Supp. at 1007. The court declared that the application of § 1332(c) to foreign corporations was consistent with the Congressional policy to limit the diversity jurisdiction of the federal courts. *Id.*

Although there are a few cases which have rejected this view,[3] this Court concurs with the *Trans World* rationale, and declares the provisions in § 1332(c) to be applicable to those companies that have been incorporated outside of the United States.

### B

■ This Court will now attempt to determine whether § 1332(c), as it is applied to foreign corporations, creates a single or a

---

1. The word "State," as used within this statute, includes the Territories of the United States, the District of Columbia, and the Commonwealth of Puerto Rico. § 1332(d).

2. Complete diversity between the parties is also required. *Strawbridge v. Curtiss,* 7 U.S. [3 Cranch] 267, 2 L.Ed. 435 (1806).

3. *See, e.g., Eisenberg v. Commercial Union Assur. Co.,* 189 F.Supp. 500 (S.D.N.Y.1960). After going through a linguistic analysis of § 1332(c), the court concluded that "[u]nless a corporation is incorporated by a State of the United States, it will not be deemed a citizen of the State where it has its principal place of business." *Id.* at 502.

*See also Chemical Transportation Corp. v. Metropolitan Petroleum Corp.,* 246 F.Supp. 563 (S.D.N.Y.1964), in which the court stated that since Congress intended to limit the diversity jurisdiction of the federal courts over domestic corporations with the enactment of § 1332(c), this statute must be read narrowly as being applicable only to domestic corporations. *But see Jerguson v. Blue Dot Invest., Inc.,* 659 F.2d 31, 35 (5th Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); *Southeast Guar. Trust Co. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001, 1007 (N.D.Ill.1973) (court found *Eisenberg* reasoning unpersuasive).

dual citizenship. Under the standard of a single citizenship, a foreign corporation with its principal place of business in the United States is a citizen only in that state. This interpretation allows diversity jurisdiction to form the basis of a lawsuit between two foreign-incorporated parties if their principal places of business are in different states within the United States.

With the recognition that "American law abhors the status of dual citizenship," [4] some courts have used § 1332(c) to create a single citizenship for the purpose of gaining diversity jurisdiction over foreign corporations with their principal place of business in the state in which the lawsuit was initiated. *Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707, 711 (9th Cir.1992); *see also Bergen Shipping Co. v. Japan Marine Services, Ltd.,* 386 F.Supp. 430, 433 (S.D.N.Y.1974) ("a corporation, be it alien or otherwise, with its principal place of business in a State should be deemed a citizen of that State"); [5] *Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 507 (2d Cir.1991) ("only the American nationality of the dual citizen should be recognized under 28 U.S.C. § 1332(a)," (citing *Sadat v. Mertes,* 615 F.2d 1176 (7th Cir.1980))).[6] After deciding that only the American nationality of dual citizens should be recognized when determining the existence of federal jurisdiction, the decisions from these courts reason that the application of § 1332(c) does not defeat diversity jurisdiction.

Although persuasive, these cases are not necessarily dispositive of the issue. Several courts have implicitly assumed that § 1332(c), if applicable to foreign corporations, would be implemented in the same manner as it is for domestic corporations. For example, in *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 790 (2nd Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981), after assuming that § 1332(c) applied in a dispute between a Swiss corporation with its principal place of business in New York and a Venezuelan corporation, the court held that the presence of "alien parties ... on both sides would destroy complete diversity." *Id.* at 790. *See also International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 392 (2d Cir.1989), *cert. denied, Golub v. Hydra Offshore, Inc.,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989) ("a corporation organized under the laws of a foreign nation remains an *alien* corporation under § 1332(c), even if its principal place of business is in one of the States"); *Giannakos v. M/V Bravo Trader,* 762 F.2d 1295, 1298 (5th Cir.1985) (no diversity of citizenship where plaintiff and defendant are aliens, despite plaintiff's establishment of residency in Louisiana); *Jagiella v. Jagiella,* 647 F.2d 561, 563 (5th Cir.1981).[7]

The Fifth Circuit Court of Appeals, in *Panalpina Welttransport GmBh v. Geosource, Inc.,* 764 F.2d 352, 354 (5th Cir.1985), also espoused the position that a foreign corporation should be treated the same as a domestic corporation for purposes of diversity jurisdiction. The court stated that an alien corporation may add an additional place of citizenship within the United States without losing its foreign citizenship, which is "in

---

**4.** *Von Dunser v. Aronoff,* 915 F.2d 1071, 1073 (6th Cir.1990).

**5.** The court premised its authority to hear the case on the basis of admiralty jurisdiction rather than on the existence of diversity under its analysis of § 1332(c).

**6.** This view is also endorsed by Professors Wright, Miller and Cooper who declare that the diversity statute should be read to treat the alien corporation

as having a single domestic citizenship rather than dual citizenship. This approach would be most appropriate when the alien corporation's principal place of business is in an American state.... Moreover, there may be affirmative

reasons why Congress should provide a federal forum. For example, when the dispute between an alien and a foreign corporation with a principal place of business in the United States arises out of local activities, a federal court should be available.

C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3628 at 668–669 (2d ed. 1984).

**7.** It is widely recognized that there is no diversity jurisdiction between two aliens. *See, e.g., Chick Kam Choo v. Exxon Corporation,* 764 F.2d 1148 (5th Cir.1985); *Professional Hockey Club Cent. Sports Club of Army v. Detroit Red Wings, Inc.,* 787 F.Supp. 706 (E.D.Mich.1992); *Corporacion Venezolana de Fomento* at 790; *Mossman v. Higginson,* 4 Dall. [4 U.S.] 12, 1 L.Ed. 720 (1800).

keeping with Congress' intendment to constrict the availability of diversity jurisdiction." *Id.; see also Rouhi v. Harza Engineering Co.*, 785 F.Supp. 1290, 1295 (N.D.Ill. 1992) ("an alien corporation with its principal place of business in a state of the United States, cannot be diverse to an alien party or a party from the state of the corporation's principal place of business").

In *Chick Kam Choo v. Exxon Corporation*, 764 F.2d 1148 (5th Cir.1985), the Fifth Circuit reaffirmed this holding, and used § 1332(c) as a basis upon which to reject diversity of citizenship. In *Chick Kam Choo*, the family of a deceased shipyard worker brought an action against the owner of the vessel on which the decedent was working at the time of his death. The district court entered a judgment in favor of the estate. The Fifth Circuit reversed, holding that the lower court lacked jurisdiction. The court concluded that where the plaintiffs were citizens of Singapore and the vessel owner was a Liberian corporation with its principal place of business in New Jersey, diversity jurisdiction did not exist. Thus, the dual citizenship interpretation of the statute has had the effect of destroying diversity between two aliens, regardless of whether one of the parties is incorporated, or has its principal place of business, in the United States.

Generally, the courts which adopt the single citizenship theory are not in direct conflict with those that utilize the dual citizenship doctrine. For example, the decisions in *Mutuelles Unies* and *Action S.A.* concerned the citizenship of an individual rather than that of a corporation. In *Mutuelles*, a French corporation brought a malpractice action against an American law firm. The defendants claimed that there was no diversity jurisdiction because one of the partners in the law firm was a citizen of Ireland and the United States. In *Action*, the court addressed the citizenship of an American citizen in reference to subsection (a) of § 1332, which does not directly relate to the citizenship determination of a corporation under subsection (c) of the statute.

The dicta in *Bergen Shipping Co.*, which suggested that a corporation might be considered solely as a citizen of the state of its principal place of business under § 1332(c), is also unconvincing. The pronouncement in that case was significantly weakened by a subsequent ruling of the Second Circuit Court of Appeals in *Venezolana*. Moreover, the view of the Second Circuit was made explicitly clear when it stated:

> we search in vain for any principled argument ... to reverse or modify our holding in *Venezolana* ... [where] we concluded beyond cavil that, in this circuit, a corporation organized under the laws of a foreign nation remains an *alien* corporation under § 1332, even if its principal place of business is in one of the States ... We made this conclusion unmistakable by citing with approval *Hercules, Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101 (S.D.N.Y.1976), a case that criticized and rejected the *Bergen* analysis.

*International Shipping*, 875 F.2d at 392.

Though it has been argued that the creation of dual citizenship of foreign formed corporations is not the best rule,[8] this Court finds the rationale in *Panalpina, Vintero Sales*, and *Rouhi* to be persuasive. If § 1332(c) is to be applied to foreign corporations, there is no indication that it should be construed any differently than the widely accepted understanding of the statute as it relates to domestic corporations. Therefore, this Court finds that there is no diversity between Pancan and MicroScan because they are aliens by virtue of their incorporation in Canada. *Eck v. United Arab Airlines, Inc.*, 360 F.2d 804, 806 (2d Cir.1966) (alien corporation is citizen of country by which chartered).

## C

▮ This Court will now address the other pending motion in which Pancan seeks to amend its Complaint for the purpose of identifying Michigan as MicroScan's principal place of business. Fed.R.Civ.P. 15(a) pro-

---

**8.** *See Trans World*, 542 F.Supp. 869 (rejecting dual citizenship); and Note, *Alien Corporations and Federal Diversity Jurisdiction*, 84 Colum L.Rev. 177, 190–91 (1984) (arguing that dual citizenship, though more limiting, does not reflect well on policy concerns of alienage jurisdiction).

vides that leave to amend a pleading "shall be freely given when justice so requires." More specifically, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. However, a court may deny such a request if there has been (1) an undue delay, (2) bad faith on the part of the movant, (3) prejudice suffered by the opposition, or (4) evidence that an amendment would be ineffectual because it cannot withstand a motion to dismiss. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Azarbal v. Medical Center of Delaware, Inc.,* 724 F.Supp. 279 (D.Del.1989). In the present case, the petition to amend is futile because the proposed Complaint would not endure an action for dismissal. Pancan's proposed Amended Complaint cannot cure the jurisdictional defect that exists between the parties. Thus, even if leave to amend is granted, this Court would continue to lack jurisdiction over the claim. Therefore, this motion must be denied.

### IV

For the foregoing reasons, MicroScan's Motion to Dismiss is granted for lack of jurisdiction and Pancan's Motion for Leave to Amend Complaint is denied.

IT IS SO ORDERED.